THE PEOPLE *ex rel.* WALTER KRYCH, Plaintiff-Appellant and Cross-Appellee, *v.* IRVING BIRNBAUM, Defendant-Appellee and Cross-Appellant.

First District (4th Division)    No. 80-2779

Opinion filed November 5, 1981.

Irving B. Campbell and Joseph M. Carrabotta, both of Stitt, Moore & Lennon, of Chicago, for appellant.

Steven M. Levin, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Walter Krych, filed this action pursuant to the Illinois Quo Warranto Act (Ill. Rev. Stat. 1979, ch. 112, par. 9 *et seq.*) (Act) in an effort to oust the defendant, Irving Birnbaum, from certain corporate offices. Although the trial court entered summary judgment for Krych ousting Birnbaum, Krych perfected this appeal on the grounds that the trial court erred in not making a specific finding as to the number of shares Krych owns in the corporation. Birnbaum filed a cross-appeal, contending primarily that the trial court erred in striking his affirmative defenses and that the court erred in granting summary judgment to Krych because there is a genuine issue of material fact as to whether Krych was a corporate shareholder.

Krych's complaint alleged that he was a shareholder in the Grove-Darrow Buildings, Inc. (Grove-Darrow), an Illinois corporation. Irving Birnbaum unlawfully usurped the offices of director and secretary of the corporation. Section 3 of the Act provides that a complaint may be set out in these general terms. (Ill. Rev. Stat. 1979, ch. 112, par. 11.) The relief requested in the complaint was that the court require Birnbaum to show by what warrant he exercised the offices of director and secretary of the corporation. In the event that he failed to justify his position, Krych requested that Birnbaum be ousted and fined pursuant to section 6 of the Act (Ill. Rev. Stat. 1979, ch. 112, par. 14).

Birnbaum answered the complaint and filed affirmative defenses of *res judicata* and collateral estoppel, statute of limitations on both oral and written contracts, pending actions between the same parties for the same cause, lack of a completed contract, unclean hands and laches. He took the position that these affirmative defenses should have precluded the court from granting Krych leave to file the complaint in *quo warranto* pursuant to section 2 of the Act (Ill. Rev. Stat. 1979, ch. 112, par. 10). On Krych's motion the affirmative defenses were stricken.

In support of his motion for summary judgment, Krych filed an affidavit stating that on August 17, 1959, he and Birnbaum purchased certain real estate in Evanston, Illinois, in equal shares and caused title to be conveyed to a land trustee. The trust agreement provided that Krych and Birnbaum were equal beneficiaries. They prepared to build houses on the property and applied for mortgage loans which they personally guaranteed. On July 27, 1960, Krych and Birnbaum caused the trustee to convey the title to the Grove-Darrow Buildings, Inc., in payment for all of its 100 shares, which were to be issued before it commenced doing business. On October 19, 1960, the parties entered into a contract in writing for the purpose of settling a stockholding dispute, declaring that each had "a 50% stock interest" in the corporation. On June 30, 1961, Birnbaum delivered to Krych an instrument entitled "Grove-Darrow

Buildings, Inc., Analysis of Stockholder's Loans," which states that the parties had each paid $500 for capital stock totalling $1000. Birnbaum at that same time delivered a balance sheet showing that the entire capital stock was $1000. Subsequently, without authority of the board of directors, Birnbaum issued stock certificates for 49½ shares to himself, 49½ to Krych and one share to Birnbaum's legal secretary, Mary Green. Krych refused to accept the tendered certificate for 49½ shares. The minutes of the first shareholders' meeting, dated October 19, 1961, record that Birnbaum stated that Mary Green was entitled to at least one share of stock because she was named as an incorporator. The last notice of a shareholders' meeting which was received by Krych was for a meeting held on October 8, 1973. The affidavit concludes by stating that Birnbaum claims he was elected to certain corporate offices at a shareholders' meeting of which Birnbaum did not give Krych the required notice.

In opposition to the motion for summary judgment Birnbaum filed an affidavit which stated essentially as follows. Krych's claim is based upon a contract dated October 19, 1960, which was a settlement agreement for the purpose of resolving a dispute between the parties which arose because Krych prevented the corporation from completing its construction project and harassed the corporation for his benefit and to the detriment of the corporation. Shortly after that agreement Krych took on the responsibility of president and Birnbaum informally agreed to act as secretary. A bank account was opened authorizing the parties to sign checks jointly. Shortly after October 2, 1960, to the present date, Krych proceeded on a pattern of harassment and delay to further his own interests and to harm those of the corporation by refusing to participate in the corporate business. Birnbaum was required to assume all of the responsibilities of the corporation and to act as general contractor. Birnbaum specifically alleged that Krych's conduct in failing to act brought the corporation into default on a mortgage and near bankruptcy. In an effort to avert this, a meeting of the incorporators was called on October 19, 1961, at which Krych and his attorney appeared but refused to participate. An election was held and two of three directors were named, one of the two being Birnbaum. The third was held vacant for Krych. Krych persisted in his refusal to act and another meeting was held on November 8, 1961. At that meeting, officers were elected and a resolution was passed which authorized the signing of checks by Birnbaum, the other director, or Krych. Shortly after that meeting Krych rejected the stock certificates for 49½ shares which were tendered to him by Birnbaum. Krych filed a suit in 1962 which has never been prosecuted and is still pending. He filed a series of cases relating to his rights in the corporation. Birnbaum claimed that since 1962, Krych has repeatedly harassed the corporation and for a period of almost 20 years has done

nothing to aid the corporation in its function. In a 1975 chancery suit, Krych admitted that Mary Green was entitled to one share of stock and Krych attempted to purchase that share of stock from Mary Green. Birnbaum claims that consequently Krych is at most entitled to only 49½ shares of stock.

The court entered summary judgment on August 6, 1980. The order found that Birnbaum was guilty of usurpation of the corporate offices as alleged. He was ousted from the offices of director, president and secretary of Grove-Darrow and prohibited from exercising the powers, performing the duties and receiving the prerogatives thereof. The order also found, and this is the basis for Krych's appeal, that Krych was the owner and holder of "at least 49-½ shares" of Grove-Darrow. The court found that as a shareholder, Krych was entitled to notice of shareholders' meetings in 1977 and 1978 and that Birnbaum failed to give notice of these meetings. Consequently, the purported election of the defendant to the offices of director, president and secretary was void.

The first issue in this cause involves the proper scope of an action in *quo warranto*. Krych's theory in bringing this action was that he, as a shareholder, was entitled to notice of the meeting at which Birnbaum was elected. Because he did not receive notice, the election was void and Birnbaum had no right to hold the offices in dispute. Krych recognizes that since all shareholders are entitled to notice regardless of the extent of their holdings, it was not necessary for the court to specifically find that he owned 50 shares in order to grant the relief requested, which was an ouster of Birnbaum from the corporate offices. However, he argues that the court should have made a definite finding that he owned 50 shares because that was the position taken in his pleadings. Also, a decision as to Krych's rights in the corporation would serve to terminate his long-standing dispute with Birnbaum. As support for his argument Krych relies on the portion of the Illinois Quo Warranto Act which provides that "[t]he Court shall determine and adjudge the rights of all parties to the proceeding." Ill. Rev. Stat. 1979, ch. 112, par. 14.

In evaluating this argument, it is necessary to briefly examine the purpose and origins of the *quo warranto* proceeding. Broadly defined, *quo warranto* is a writ of inquiry as to the warrant or authority for doing the acts of which complaint is made. (65 Am. Jur. 2d *Quo Warranto* §1, at 230 (1972).) It has been recently described as " '[a]n extraordinary proceeding, prerogative in nature, addressed to preventing a continued exercise of authority unlawfully asserted.' " (*Department of Illinois Disabled American Veterans v. Bialczak* (1976), 38 Ill. App. 3d 848, 850, 349 N.E.2d 897, 899.) In its inception, the action was available only where the public interest was involved. However, it has now been extended to redress private as well as public wrongs. (*People ex rel. Brooks v. Village*

*of Lisle* (1974), 24 Ill. App. 3d 432, 321 N.E.2d 65.) *Quo warranto* has been recognized as an appropriate means of determining the right of title to office in a corporation chartered by the State. (See *Department of Illinois Disabled American Veterans v. Bialczak.*) Although originally the courts had power only to oust the defendant from office, statutes in many jurisdictions have "enlarged the proceeding so as to permit a determination both of the question of usurpation by the person in office and of the claim of the person asserting a right thereto * * *." 65 Am. Jur. 2d *Quo Warranto* §115, at 312-13 (1972).

As pertinent to the present appeal, the Illinois Quo Warranto Act (Ill. Rev. Stat. 1979, ch. 112, par. 9 *et seq.*) provides that "[a] proceeding in quo warranto may be brought in case * * * [a]ny person shall usurp, intrude into, or unlawfully hold or execute any office, or franchise, or any office in any corporation created by authority of this State." (Ill. Rev. Stat. 1979, ch. 112, par. 9(a).) Under the statute, the defendant is required to answer by what warrant or authority he holds the office in question. (Ill. Rev. Stat. 1979, ch. 112, par. 11.) If he fails to establish his right to the office, the court is authorized to render a judgment of ouster and to enter a fine. (Ill. Rev. Stat. 1979, ch. 112, par. 14.) The statute further provides that "[t]he several rights of diverse parties to the same office or franchise, privilege, exemption or license, may properly be determined in one action," but that "[n]o matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." Ill. Rev. Stat. 1979, ch. 112, par. 11.

■■■ We believe that a fair reading of the Act leads to the conclusion that its "distinctive purpose" is to provide an expeditious means for challenging the authority of one who claims to hold office in a corporation created pursuant to the laws of this State. The trial court was able to grant the requested relief by determining that Krych was a shareholder and that he was not notified of the meeting at which Birnbaum was elected to the office in question. The purpose of the Act would be ill-served by a holding that the trial court was also required to render what in effect would have been a declaratory judgment as to the ownership of one-half share of corporate stock which has been the subject of dispute for over 20 years. A determination of this matter would have involved the court in intricate and involved issues of fact which are collateral to the determination of whether or not the defendant lawfully held the offices he claimed. Birnbaum contends that the trial court erred in granting summary judgment to Krych because there was a genuine issue of material fact as to whether Krych was a corporate shareholder. He claims that although Krych was a subscriber for 49½ shares, he rejected the shares when tendered and therefore never became a shareholder in Grove-Darrow. Thus, the corporate records, on their face, do not show Krych to be a

shareholder. Alternatively, Birnbaum argues that even if Krych did become a shareholder in Grove-Darrow, he lost his shares either through laches or by operation of the statute of limitations.

■■ The record shows that Krych contributed capital to the corporation with the expectation of receiving corporate shares in return. It is clear that Krych rejected the tendered stock certificates for 49½ shares not because he intended to withdraw from the corporation but rather because he believed he was entitled to 50 shares. Although a dispute arose shortly after incorporation as to the ownership of one share of stock, Birnbaum recognized Krych's status as a shareholder by notifying him of shareholders' meetings until October of 1973. There is no allegation by Birnbaum that Krych sold or transferred any of his shares. While the affirmative defenses of laches and the statute of limitations may have had validity with respect to Krych's claim to own 50 rather than 49½ shares, they do not seem pertinent to his claim to be a shareholder in Grove-Darrow. We therefore agree with the trial court that no genuine issue of material fact was raised with respect to Krych's status as a shareholder.

■■ Birnbaum's claim that this suit is barred by *res judicata* or collateral estoppel is also without merit. His argument is that the issues raised in the present *quo warranto* action were determined against Krych in his previous suit for dissolution of the corporation. In that case, Birnbaum raised certain affirmative defenses to which Krych failed to respond. The trial court entered judgment on the pleadings for Birnbaum and Krych appealed. The appellate court held that the trial court abused its discretion in not allowing Krych to file a later reply. It reversed and remanded the cause to the trial court with instructions that Krych be allowed to file a reply. Krych declined to do so and proceeded instead to prosecute the present *quo warranto* action against Birnbaum. The issue of whether Krych was a shareholder in Grove-Darrow was not decided. The effect of a reversal is to abrogate the judgment and leave the case as it stood prior to the judgment. (*Willett Co. v. Carpentier* (1954), 4 Ill. 2d 407, 123 N.E.2d 308.) Therefore, we do not believe that the judgment rendered in the 1975 suit amounted to a final determination of the issues which were before the trial court in this cause.

■■ Neither are we persuaded that the *quo warranto* action before us was barred by section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(c)), which provides that a defendant may file a motion for dismissal of an action on the ground that "there is another action pending between the same parties for the same cause." Even a liberal interpretation of that section would not lead to the conclusion that the present suit.is for the "same cause" as the lawsuits filed by Krych in 1962 and 1975. The 1962 suit was filed in an effort to prevent Birnbaum from drawing checks against the corporate bank account without Krych's

signature. Krych requested that Birnbaum be restrained from issuing checks and sought an accounting as to checks already drawn. In 1975, Krych filed a complaint seeking declaratory relief, an accounting and dissolution of the corporation. Birnbaum argues that to come within the purview of section 48(1)(c) it is only necessary to show that the relief requested in the prior pending actions was predicated on substantially the same set of facts as the later action. (*Baker v. Salomon* (1975), 31 Ill. App. 3d 278, 334 N.E.2d 313.) It is true that all of the lawsuits filed by Krych involved, to some extent, his status as a corporate shareholder. However, it is clear that the facts which formed the basis of the instant *quo warranto* suit, *i.e.*, the 1976 shareholders' meeting of which Krych was not notified and the election of Birnbaum to the offices of director and secretary, were not existent at the time the previous lawsuits were filed.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.