CHICAGO TITLE AND TRUST COMPANY, as Trustee, Plaintiff-Appellee, v. THE VILLAGE OF MOUNT PROSPECT, Defendant-Appellee (Chicago Title and Trust Company, as Trustee, *et al.*, Plaintiffs and Intervenors-Appellees; The City of Prospect Heights, Defendant and Intervenor-Appellant).

First District (4th Division)   Nos. 87—0601, 87—0822 cons.

Opinion filed August 27, 1987.

Altheimer & Gray, of Chicago (Donald J. Kreger, Kenneth C. Shepro, and Ruth Krugly, of counsel), for appellant.

Chapman & Cutler, of Chicago (David S. Barritt and David T. B. Audley, of counsel), for appellees homeowner associations.

Jay A. Canel and Peter M. King, both of Jay A. Canel, P.C., Norman Samelson, of Samelson, Knickerbocker & Associates, Zoran Dragutinovich, of Sonnenschein, Carlin, Nath & Rosenthal, and Howard Borde, all of Chicago, for appellees Marshall Turner and Chicago Title & Trust Company.

JUSTICE JIGANTI delivered the opinion of the court:

The city of Prospect Heights brings this appeal from an order of the trial court denying its petition for leave to intervene. The village of Mount Prospect initiated the instant proceeding by filing a motion to vacate certain consent decrees entered into between Mount Prospect and the plaintiff in 1971 and 1972. The consent decrees resulted from efforts to settle a 1965 dispute arising from an annexation agreement between Mount Prospect and the plaintiff in its capacity as titleholder to certain property adjacent to the corporate limits of Mount Prospect. In 1985, Mount Prospect filed a motion to vacate the consent decrees and Prospect Heights, an adjoining municipality which came into existence in 1976, sought leave to intervene. The trial court denied the petition on the ground that it was not timely and subsequently entered a consent decree amendment which settled the dispute as to all parties except Prospect Heights. Prospect Heights contends on appeal that the trial court abused its discretion in denying its petition for leave to intervene and that the 1971 and 1972 consent decrees were void from their inception and therefore subject to attack at any time.

This litigation was initiated in 1965 by plaintiff Chicago Title and

Trust Company as trustee (property owner) seeking a declaratory judgment that an annexation agreement entered into between it and Mount Prospect was valid and enforceable and that the plaintiff could proceed with the development of the subject property in accordance with the terms of the agreement. Pursuant to the agreement, Mount Prospect zoned the property as a Planned Recreational Open Space District, which permitted office, hotel and residential uses and required that 60% of the area remain open space. On May 11, 1971, Mount Prospect and the property owner agreed to settle the declaratory judgment action by way of a consent decree which reaffirmed the annexation agreement and set forth a plan of development which increased the number of allowable residential units from 1,200 to 2,400. On April 28, 1972, the consent decree was superseded by an amended consent decree which also provided for 2,400 units, but set out a different staging plan, engineering criteria and parking requirements. The court expressly reserved jurisdiction for the purpose of construing, implementing or enforcing the amended consent decree.

Between 1972 and January 1, 1976, the date on which Prospect Heights became an incorporated municipality, 256 residential units were constructed on the property, a 2-million-gallon water tank was constructed and water and sewer lines sufficient to accommodate the maximum development of the property were installed by the property owner. Between 1976 and 1985, 132 additional residential units and a commercial development were completed.

On December 5, 1985, Mount Prospect filed a motion to vacate both the 1971 consent decree and the 1972 amended consent decree on the ground that the property owner failed to develop the property in accordance with the terms of the decrees. Certain homeowners associations and a contract-purchaser of a portion of the subject property were allowed to intervene in the proceeding as additional plaintiffs. On December 20, 1985, Prospect Heights filed a petition for leave to intervene as an additional party-defendant and to file a motion to vacate the 1971 and 1972 consent decrees. The petition alleged that the consent decrees were approved by Mount Prospect without the requisite public notice and hearing and that the plan of development contained in the consent decrees was inconsistent with the development and use of surrounding properties located within Prospect Heights, which borders the subject property. The petition further alleged that the streets and highways serving Prospect Heights were not adequate to accommodate the additional traffic which would be generated by the development and that the development would have an adverse environmental impact upon properties located in Prospect

Heights. The proposed motion to vacate contained allegations that the property owner abandoned development of the property. The motion also contained several allegations of special injury and damage which Prospect Heights would sustain if the property were developed in accordance with the 1971 and 1972 consent decrees. Shortly after the petition for leave to intervene was filed, the trial court was informed that negotiations were in progress with respect to further amendments to the consent decrees.

Approximately one year later, the parties requested the court to enter a consent decree amendment which decreased the number and height of allowable residential units on a specific portion of the property and increased the number of parking spaces to be provided. It also obligated the developer of the property to provide certain sidewalk improvements and to contribute $100,000 for the purpose of constructing a fire station. Prospect Heights objected to the proposed consent decree amendment and maintained that it would persist in its petition for leave to intervene. On January 26, 1987, the trial court denied Prospect Heights' petition for leave to intervene for the purpose of challenging the 1971 and 1972 consent decrees on the ground that it was untimely. Although the court allowed Prospect Heights 14 days to file a petition for leave to intervene for the purpose of participating in the proceedings concerning the proposed consent decree amendment, Prospect Heights failed to do so. The court entered the consent decree amendment on February 19, 1987.

■■ Prospect Heights contends on appeal that the trial court abused its discretion in denying its petition for leave to intervene in the proceeding for the purpose of filing a motion to vacate the 1971 and 1972 consent decrees.

Section 2—408 of the Illinois Code of Civil Procedure provides that intervention may be permitted as of right or pursuant to the discretion of the court. (Ill. Rev. Stat. 1985, ch. 110, par. 2—408.) However, regardless of whether intervention is sought as a matter of right or by leave of the court, section 2—408 requires that the petition be timely filed. (*Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 377 N.E.2d 1152.) The determination of whether a petition for leave to intervene is timely is left largely within the sound discretion of the trial court. 61 Ill. App. 3d 174, 377 N.E.2d 1152.

In the case at bar, Prospect Heights, which came into existence in 1976, waited for a period of 10 years before seeking to challenge the consent decrees permitting the development of the subject property. It maintains that the delay was excusable because the plaintiffs had

not been developing the property in accordance with the consent decrees and that Prospect Heights was therefore "not required to have created a controversy where none presently existed." It further argues that there has been no showing that it was aware of the consent decrees and that, since 1976, Prospect Heights has developed in a manner which would render development of the subject property pursuant to the consent decrees inconsistent with the surrounding area. We are not persuaded by these arguments.

We believe that it was incumbent upon Prospect Heights, within a reasonable time after its incorporation as a municipality, to ascertain the zoning classifications of its neighboring properties and to take whatever steps were necessary to institute challenges at that time. The consent decrees permitting the development of the property in question were a matter of public record in 1976 and could have been located upon reasonable inquiry.

The cases cited by Prospect Heights do not deal with the issue of timeliness as presented by the facts of this cause. In *Anundson v. City of Chicago* (1970), 44 Ill. 2d 491, 256 N.E.2d 1, which Prospect Heights characterizes as aptly summarizing its position on the timeliness issue, the supreme court held that a petition for leave to intervene filed 3½ years after judgment in a declaratory judgment action was timely filed. However, the factual setting of that case is readily distinguishable from that of the instant cause. *Anundson* involved a declaratory judgment action in which the trial court held certain provisions of the Chicago zoning ordinance unconstitutional as applied to a particular parcel of property and entered a decree permitting construction of an office building on the property. Construction was begun approximately two years after the decree was entered. Several months after construction had begun, certain adjoining landowners filed a complaint with the city stating that the manner in which the building was being constructed violated the terms of the decree. When no action was taken by the city, the landowners petitioned for leave to intervene in the original declaratory judgment action. In doing so, they sought not to challenge the decree but rather to enforce it by advising the court of a violation of its terms. In holding that the petition to intervene was timely filed, the supreme court stated that prior to construction of the building, the adjoining landowners could not be expected to foresee that it would be constructed in a manner which violated the terms of the decree.

The consent decrees in the case at bar gave the property owner the right to develop the subject property according to the specific terms set forth in the decrees. We do not believe that Prospect

Heights can use *Anundson* as support for their argument that because the property was not being fully developed, it could reasonably refrain from challenging the permitted development in the hope that it would never occur. Under the circumstances in the instant cause, we cannot say that the trial court abused its discretion in denying Prospect Heights' petition, filed 10 years after the municipality came into existence and approximately 13 years after the entry of the consent decrees, on the basis that it was not timely filed.

■ Prospect Heights next contends that the 1971 and 1972 consent decrees were void from their inception because Mount Prospect accomplished the rezoning necessary to implement the decrees without following the public notice and hearing requirements set forth in its zoning ordinance. It maintains that because a void order is subject to attack at any time, it would be in the interest of judicial economy to allow Prospect Heights to intervene in the instant proceeding rather than require it to file a separate lawsuit.

In making this argument, Prospect Heights does not maintain that Mount Prospect lacked the authority to zone land within its boundaries or to enter into agreements to settle litigation. Rather, it argues that the zoning necessary to implement the consent decrees was accomplished in an improper manner because the procedures required by Mount Prospect's zoning law were not followed. In our view, this would at most render the consent decrees voidable rather than void and therefore not subject to collateral attack. (See *Mahoney Grease Service, Inc. v. City of Joliet* (1980), 85 Ill. App. 3d 578, 406 N.E.2d 911.) In *Mahoney* the city of Joliet contended that a settlement agreement into which it had entered was void because it failed to follow its zoning laws in rezoning land pursuant to the agreement. The court on appeal rejected this argument, stating that "the settlement of disputed litigation and the annexation and zoning of land are within the legal authority of the city of Joliet to accomplish and are not absolutely void acts *per se.*" (85 Ill. App. 3d 578, 582, 406 N.E.2d 911, 914.) In support of its argument that the consent decrees were void, Prospect Heights cites *Martin v. City of Greenville* (1977), 54 Ill. App. 3d 42, 369 N.E.2d 543. Like the instant cause, *Martin* involved a settlement agreement between a city and a property owner which required the city to rezone certain property. One week after entry of the settlement agreement, the city attempted to repudiate it on the ground that the zoning was accomplished without the required public hearing. The property owner filed a motion to enforce the agreement, and the trial court sustained the motion. On appeal, the *Martin* court was faced with a direct attack on the settlement agree-

ment and held the agreement invalid, declaring it null and void. Because the *Martin* case did not involve a collateral attack, the court was not presented with and did not address the question of whether the agreement was void from its inception as opposed to merely voidable. For that reason, we do not believe that it controls the issue as it is presented in the case at bar.

■ Finally, we note that in addition to appealing from the denial of its petition for leave to intervene, Prospect Heights has appealed from the court order entering the consent decree amendment. Our review of the record reveals that at the time the trial court denied Prospect Heights' petition for leave to intervene to challenge the 1971 and 1972 consent decrees, it indicated that it believed Prospect Heights would be allowed to intervene in order to contest the proposed consent decree amendment. The court then allowed Prospect Heights 14 days to file a petition for leave to intervene limited to that purpose. However, Prospect Heights failed to do so and has stated in its appellate brief that intervention limited to challenging the consent decree amendment, which lowered the density of a portion of the development, would have been "meaningless" because "success in blocking the Consent Decree Amendment would result in an even more obnoxious and unreasonable development permitted pursuant to the 1972 Amended Consent Decree." At oral argument before this court, counsel for Prospect Heights stated that should this court determine that Prospect Heights could not properly intervene for the purpose of challenging the 1971 and 1972 consent decrees, it did not desire to intervene solely for the purpose of attacking the consent decree amendment. For this reason, we need not consider the issue of whether Prospect Heights was entitled to intervene for that purpose.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.