AD-EX, INC., Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellant and Cross-Appellee.

First District (3rd Division) Nos. 1—89—1657, 1—89—2737, 1—89—3036, 1—89—3290, 1—90—0348 cons.

Opinion filed September 19, 1990.—Supplemental opinion filed on denial of rehearing January 9, 1991.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellant.

Robert W. Fioretti, of Fioretti & Des Jardins, Ltd., Paul G. Simon, and Jenner & Block, all of Chicago (Thomas P. Sullivan and William A. Von Hoene, Jr., of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, City of Chicago (City), brought this action to reverse certain orders of the circuit court and to declare a settlement agreement void and unenforceable.

In 1986, plaintiff, Ad-Ex, Inc., filed 34 lawsuits, one for each of its proposed advertising signs, against the City. The lawsuits challenged the constitutionality of the City's sign ordinance. The ordinance requires a 500-foot setback from expressways. (Chicago Municipal Code ch. 194A, §8.9(5) (1988).) In February 1989 the City and Ad-Ex entered into a settlement agreement which purported to vary the setback requirement. The variance was agreed upon without first giving notice and holding a public hearing as is required by ordinance. (Chicago Municipal Code ch. 194A, §11.7—2 (1988).) The circuit court entered an agreed order dismissing the lawsuits, with prejudice. The settlement agreement was incorporated in the order.

Essentially, the settlement agreement provided that the City

would vary the setback requirement and issue sign permits for the erection of 21 signs, as they had been defined in the lawsuits, and for seven additional signs, for which the parties had negotiated. Pursuant to the agreement, permits would be issued for the erection of the signs provided that "the issuance of such permits [would] comply with all applicable laws of the City of Chicago *** and all Federal and State laws." Additionally, Ad-Ex was prohibited from erecting any other signs which would not be in compliance with the City's sign ordinance.

In March and April 1989, Ad-Ex applied for permits for 16 of the 28 sign locations. In May, the applications were rejected for failure to comply with the 500-foot setback requirement. Subsequently, Ad-Ex filed a motion to compel issuance of the permits. The City opposed the motion on the grounds that Ad-Ex had not complied with all applicable laws, *viz.*, obtaining prior approval from the city council.

According to the City, Ad-Ex had submitted city council orders from 1987 with its permit applications. The sign heights listed in the council orders were inconsistent with the sign heights listed in the permit application. The council orders which Ad-Ex submitted also required compliance with all provisions of the zoning ordinance, including those which the settlement agreement waived.

On June 14, in response to Ad-Ex's motion, the court ordered the City to issue permits on 16 pending applications by June 23, 1989. On June 23, the City filed an emergency motion to stay the court's June 14 order. The motion was denied. The City then filed, in this court, an emergency notice of appeal and an emergency motion for a stay pending appeal. The motion was denied. The City issued no permits.

On July 11, 1989, the City learned that Ad-Ex had constructed a sign at 5000 W. Flournoy. The sign's face area exceeded 2,400 square feet, and there had been no permit issued for its construction. The City then commenced administrative proceedings (F-5 proceedings) against Ad-Ex to compel its compliance with the City's sign ordinance regarding permits (Chicago Municipal Code §14—40—090 (1990)),[1] and its conformance with the settlement agreement. Ad-Ex did not appear for the July 26 administrative hearing, despite the fact that it had been given notice. Counsel for the City wrote to counsel for Ad-Ex, advising that Ad-Ex would have to remove the sign or modify it to reduce the sign face area to 1,200 square feet, in compliance with the terms of the settlement agreement. Counsel for Ad-Ex responded that the sign was in conformance with the agreement. The City sus-

---

[1]Prior code §86.1—8 (1983).

pended Ad-Ex's permit privileges and declined to issue any permits.

Ad-Ex filed an emergency petition on July 13, 1989, for rule to show cause. At the July 31 hearing on the petition, the City agreed to continue processing the other permit applications while prosecuting the Flournoy violation.

On August 17, 1989, Ad-Ex filed an emergency motion to stay the administrative proceedings and permit the processing of permits. The trial court denied the motion to stay the proceedings but ordered the City to process Ad-Ex's permit applications independently of the issues involved in the administrative proceedings on the Flournoy sign. No permits were issued.

On September 25, 1989, Ad-Ex filed a second motion to stay administrative proceedings, and compel the processing and issuing of approved permits. On September 27, in response to the motion, the City argued that the August court order provided that the City would continue to process the permit applications during the pendency of the F-5, not that it would issue any permits. The City argued that to issue permits while there was an existing violation would effectively waive the City's penalty provisions.

On October 4, 1989, an evidentiary hearing on the September motion was held. Timothy Cullerton, chief electrical inspector for the department of inspectional services, testified that a City ordinance mandates the suspension of a contractor's sign permit privileges if the contractor erects a sign without a permit. According to Cullerton, the usual practice during an F-5 is to return pending permit applications without reviewing them until the F-5 is resolved. However, in compliance with the court's prior orders, the City did not return any of Ad-Ex's pending applications, but rather, continued to review them.

Chester Figlerlowicz, an electrical inspector for the City, testified that the Flournoy sign was double-faced and flag mounted. According to the City, although Ad-Ex submitted several applications for a sign at Flournoy, none of them were consistent with the 2,400-square-foot, double-faced, flag-mounted sign that Ad-Ex actually erected there. The court directed the City to issue, unimpeded by the F-5 proceeding, any pending permits approved for other sign locations.

Also at the October hearing, the City filed a motion to set aside the settlement agreement, claiming that Ad-Ex had materially breached it and that it was void as against public policy.

At a subsequent hearing on the motion, the City argued that the agreement was void because it purported to waive enforcement of a mandatory zoning ordinance, without notice or a public hearing. Regarding the alleged breach, the City presented testimony that the

Flournoy sign was leaning and out of plumb. The City states in its brief that at an earlier hearing there was testimony that the sign was not in conformance with the terms of the agreement. Thomas Walsh, an executive with Ad-Ex's parent company, Universal, testified that Ad-Ex had expended funds and made commitments to clients in reliance on the settlement agreement.

The court, in denying the City's motion, stated that the City had acted repeatedly, since the February settlement, in a way which would indicate, both by its remarks and its conduct, that it was ratifying the actions of the corporation counsel in entering into the settlement. The court also noted that the city council had passed no resolution disavowing the settlement.[2] The court stated that it was persuaded to deny the city's motion to set aside the agreement because of the apparent reliance and expenditure incurred by Ad-Ex.

On November 2, 1989, the court again entered an order directing the City to issue the permits upon Ad-Ex's compliance with all applicable laws. On November 15, 1989, the court held a hearing on Ad-Ex's second petition for rule to show cause. The City argued that it had not issued the pending permits because Ad-Ex's bond had been revoked and because the drawings submitted with its applications showed double-faced, rather than single-faced, signs. The court held that the bond, based on Ad-Ex's Flournoy sign, should not be used to block the issuance of permits at other sites. The court then ordered the City to issue three permits, on the condition that they were in compliance with the terms in the settlement agreement and all other applicable laws.

On November 28 Ad-Ex filed a motion to have permits issued for structures with two-sign capability. The court denied Ad-Ex's motion to issue double-sign permits, finding that the settlement agreement contemplated one-sign structures only.

The City appeals from the court's several orders, and these appeals have been consolidated. The City urges two contentions on appeal: (1) the settlement agreement cannot be enforced; and (2) the trial court erred by directing it not to enforce a mandatory penalty set by ordinance.

Ad-Ex cross-appeals contending that section 6.01 of the chapter on roads and bridges (Ill. Rev. Stat. 1987, ch. 121, par. 506.01) must have been contemplated by the parties in the settlement agreement

---

[2]On June 7, 1990, the city council passed an ordinance disavowing the settlement agreement between Ad-Ex and the City of Chicago. A copy of the ordinance was filed in this court, prior to oral argument, on June 21, 1990.

and, therefore, the word definitions therein must be implied in its interpretation. Thus, it argues, based on the statute more than one sign face per location should be permitted and the trial court erred in finding otherwise.

Since we find the City's first argument dispositive, we need not reach the other issues raised in this appeal.

The City first contends that the settlement agreement cannot be enforced. It argues that the agreement is void and unenforceable because it violates a duly enacted city ordinance. Since the agreement waives the required 500-foot setback for advertising signs (Chicago Municipal Code ch. 194A, §8.9(5) (1988)), absent proper notice and a public hearing on the waiver (Chicago Municipal Code ch. 194A, §11.7—2 (1988)), the agreement is void.

■ Municipalities are limited to only those powers which are given to them by constitution and statute, and a municipality cannot be bound by a contract that does not comply with the prescribed conditions for the exercise of its power. (*Wacker-Wabash Corp. v. City of Chicago* (1953), 350 Ill. App. 343, 354, 112 N.E.2d 903.) A municipality must follow its own valid ordinances. Further, "[a] person dealing with a municipal corporation is charged with the knowledge of the limitations of the power of the corporation for any contract attempted to be entered into by any of its officials." (*May v. City of Chicago* (1906), 222 Ill. 595, 599-600, 78 N.E. 912.) Compliance with a charter or statutory requirements which are merely directory, or do not involve the right or power of the city to make the contract, or which relate merely to questions of procedure, is not essential to the validity of a municipal contract. 63 C.J.S. Municipal Corporations §979 (1950).

■ In our view, the requirements of prior notice and a public hearing in zoning cases, imposed upon the City by the Municipal Code, are not simply directory, but are instead mandatory prerequisites to the city's power to vary its zoning ordinances. These requirements are, therefore, conditions precedent to the validity of the settlement agreement in issue here.

Ad-Ex argues that under *Mahoney Grease Service, Inc. v. City of Joliet* (1980), 85 Ill. App. 3d 578, 406 N.E.2d 911, and *Chicago Title & Trust Co. v. Village of Mt. Prospect* (1987), 160 Ill. App. 3d 851, 513 N.E.2d 915, the lack of notice and a hearing were merely irregular exercises of the City's authority. Therefore, since the City was not absolutely without power to vary the setback requirement, the settlement agreement is merely voidable, not void, and should be enforced.

In *Mahoney*, the City of Joliet contended that a settlement agreement into which it had entered, providing for the rezoning of land,

was void because the city failed to hold a hearing, as required by law, prior to enacting the zoning change. The court acknowledged that a municipal contract which is legally prohibited or beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action. However, the court reasoned that since the city had the legal authority to zone land, the rezoning, without the statutorily required hearing, was not an absolutely void act *per se*. The court held that the failure to hold the hearing was merely an irregularity in the exercise of the city's authority and likened the case to *Branigar v. Village of Riverdale* (1947), 396 Ill. 534, 72 N.E.2d 201. The court then concluded that the settlement agreement was within the class of municipal contracts which was not void absolutely and consequently the type that a city could ratify or be estopped to deny.

Since the *Mahoney* court reached the decision to bar the city's estoppel defense based on its analysis of *Branigar*, we were naturally led to consider *Branigar*. We find the cases to be factually distinguishable. We note also that the *Mahoney* court gave no consideration to *Martin v. City of Greenville* (1977), 54 Ill. App. 3d 42, 369 N.E.2d 543 (discussed later in this opinion).

In *Branigar*, the plaintiffs applied to the Village of Riverdale for a water main extension. The village was without funds to pay for such an extension and subsequently entered into an agreement with the plaintiffs, whereby the plaintiffs would finance and construct the extension and the village would reimburse them. The president and board of trustees passed two separate ordinances regarding the first and a further extension. The ordinances were adopted and an agreement was entered into between the village and the plaintiffs in conformance with the ordinances. *Branigar*, 396 Ill. at 537.

There was no indication in the record that either of the ordinances was ever published or posted. However, several news items appeared in the issues of the only newspaper in the village reciting the activities of the board of trustees and discussing the ordinance and contracts involved therein. (396 Ill. at 537.) A third ordinance was passed by the president and board which set forth the enactment of the two earlier ordinances. This ordinance was published, in full, in the only newspaper of general circulation in the village. 396 Ill. at 537-38.

The village subsequently refused to pay the cost of the extensions and the plaintiffs sued. The village argued that the plaintiffs should not be permitted to recover on the agreement because, *inter alia*, the contracts were *ultra vires* in that they were not authorized by statute, the ordinances had not been published and were therefore void,

and there had been no prior appropriation for the extension. 396 Ill. at 539.

The supreme court, in addressing the village's publication defense, stated that the failure of the village to publish was nothing more than an irregularity in the exercise of its power. The court noted that the actions of the board of trustees were given publicity in the newspaper circulated in the village and that there was no question that people knew of the proposed action. The court further noted that the third ordinance, which acknowledged the village's debt, had been properly published as was required by statute. (396 Ill. at 546.) The court stated that the residents of the village had full legal notice of the ratification of the prior ordinances, and could have objected to the entire transaction at that time. (396 Ill. at 546-47.) The court then concluded that "the failure to publish was an irregularity, only, which the city is now estopped from asserting in defense of [the] cause." 396 Ill. at 547.

It is not clear from *Branigar* whether the court considered that the failure to make publication in general would constitute an irregularity, or whether the method of publication there was what constituted the irregularity. The *Mahoney* court has apparently interpreted *Branigar* to stand for the former proposition. For in *Mahoney*, there are no facts reported which would indicate, like in *Branigar*, that the public was in any way put on notice of the City's actions and thereby given the opportunity to be heard. Similarly, in the present case the due process rights of interested third parties were completely abrogated by the settlement agreement. We believe that in the absence of any form of publication *Branigar* might have been decided differently.

*Chicago Title & Trust Co. v. Village of Mt. Prospect*, 160 Ill. App. 3d 851, 513 N.E.2d 915, followed the reasoning in *Mahoney*. There, the Village of Mt. Prospect entered into a consent decree to annex certain property without the requisite prior notice and hearing. The defendant-intervenor, relying on *Martin v. City of Greenville* (1977), 54 Ill. App. 3d 42, challenged the validity of the decrees for the village's lack of compliance with the notice and hearing requirements. The court, in rejecting the defendant's argument, relied on *Mahoney* and classified the agreement as voidable. The court then distinguished *Martin*, stating that the settlement agreement there did not involve a collateral attack and therefore the court was not presented with and did not address the question of whether the agreement was void from its inception as opposed to merely voidable. Additionally, the *Chicago Title* court noted that the defendant-intervenor's attack on the consent decrees occurred 10 years after the decrees had been entered.

Here, as in *Martin*, there is a direct attack on the validity of the agreement. Further, the eight-month delay does not begin to equal the 10-year delay in *Chicago Title*.

In *Martin*, the plaintiffs filed a petition seeking to amend the City's zoning ordinance whereby a tract of land owned by the plaintiffs in a district zoned R-1 would be rezoned R-3. The petition was denied. Subsequently, the City of Greenville and the plaintiffs entered into a settlement agreement whereby the land would remain zoned R-1, but the plaintiffs would be able to construct 12 apartment units on it. (54 Ill. App. 3d at 43-44.) The following day, the city council repudiated the agreement.

Pursuant to the city ordinance no amendment to an ordinance could be made by the city council without prior public notice and public hearing. (54 Ill. App. 3d at 45.) The city did not comply with the notice and hearing requirements. The court stated that the agreement would amend the ordinance by modifying the existing zoning requirements. The court further stated that by foregoing the notice and hearing requirements of the ordinance the city had acted beyond its authority. The court held that the settlement agreement was null and void. 54 Ill. App. 3d at 46.

The court here considered both *Martin* and *Mahoney Grease*. The court stated that it was troubled by the "seemingly specific language of *Martin*," but that it was "equally troubled by the existence of the *Mahoney* case," and the fact that "even *Martin* doesn't address whether this is a void or a voidable contract." The court then stated that the City's continued conduct and acts indicated a ratification of the settlement agreement. Further, the court stated that there had been an absence of any direct attack upon that agreement by the corporation council or by the city counsel to disavow it. Consequently, the court was persuaded to deny the motion to set aside the settlement agreement because of the apparent reliance and expenditure incurred by Ad-Ex.

■ A municipal contract which is legally prohibited or beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action. (*People ex rel. Stead v. Spring Lake Drainage & Levee District* (1912), 253 Ill. 479, 500, 97 N.E. 1042.) However, where the contract is within the corporate powers, but merely defectively or irregularly made, the municipality may not avoid it on the grounds that it exercised it irregularly, and it may be later ratified by the action of the municipality. (*South Suburban Safeway Lines, Inc. v. Regional Transportation Authority* (1988), 166 Ill. App. 3d 361, 367, 519 N.E.2d 1005; *Diversified Computer Services, Inc. v. Town of York*

(1982), 104 Ill. App. 3d 852, 433 N.E.2d 726.) Thus, whether the City's conduct served to ratify the contract is of no moment where the contract is void *ab initio.*

Ad-Ex distinguishes *Martin* on the basis that there, the settlement agreement was set aside immediately before any change in the positions of the parties. While, here, a period of several months, February to October, had passed before the City brought its motion to set aside the agreement.

The City points to several intervening factors which contributed to its eight-month delay in attacking the agreement, such as the appointment of a new corporation counsel in May 1989 and a lawsuit filed by an Ad-Ex competitor, challenging the validity of the agreement.

While eight months cannot be considered as timely, still it does not compare to the 10 years, with which the court took issue, in *Chicago Title & Trust.* We also note, and plaintiff conceded at oral argument, that while the June 7 city council ordinance disavowing the agreement is of no moment, it places the facts of this case more squarely within the parameters of *Martin.* Further, if it is determined that the contract is void, the passage of time will not serve to validate it.

In *Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, 478 N.E.2d 1187, the plaintiffs entered into a collective bargaining agreement with the village. The agreement contained various provisions relating to wages, salaries and benefits for certain police officers. The agreement was executed in 1982. In 1983, the plaintiffs filed a grievance, protesting the village's failure to pay the wage increase, which, pursuant to the agreement, had become due on May 1, 1983. The plaintiffs were subsequently notified that the village did not consider itself bound by the agreement. 133 Ill. App. 3d at 288.

The plaintiffs then filed an action to compel arbitration and to enforce the provisions of the agreement. During the course of the proceedings, the village argued that any contract for which appropriations had not been previously made was null and void. As of the 1982 execution of the contract, there had been no appropriation; therefore, the agreement was *ultra vires* and void. (133 Ill. App. 3d at 288.) The court agreed that the contract was *ultra vires* and held that the village was not estopped from asserting the defense, even though it did not dispute the terms of the contract until May 1983, when the first wage increase became due. 133 Ill. App. 3d at 292.

We note in passing that Ad-Ex's reliance on *Metropolitan Housing Development Corp. v. Village of Arlington Heights* (N.D. Ill. 1979), 469 F. Supp. 836, *aff'd* (7th Cir. 1980), 616 F.2d 1006, as a case

that is "directly on point" is misplaced. In *Metropolitan*, a housing development brought an action against the Village of Arlington Heights for allegedly racially discriminatory zoning. The village, in settling the dispute, did not follow its normal annexation and zoning procedures, but instead, entered into negotiations with the housing development for a consent decree. A neighboring village, Mount Prospect, moved to intervene, challenging the authority of the village to enter into the consent decree. After Mount Prospect moved to intervene, the board of trustees of Arlington Heights held an open meeting to receive public comment on the proposed consent decree. Representatives from Mount Prospect were present at the meeting and were heard. The consent decree was subsequently approved.

At a hearing on the validity of the consent decree, Mount Prospect claimed that the village's failure to proceed by normal zoning procedures abridged its right to procedural due process. The district court upheld the consent decree, finding that Mount Prospect, as well as other intervenors, had been given a full hearing on the merits of their objections to the proposed annexation and rezoning.

Ad-Ex has extracted language from the appellate court opinion in *Metropolitan* which, when read in isolation of the facts of the case, appears to support its argument that the settlement agreement here should be enforced. The language is to the effect that settlement agreements are encouraged and when approved by the district court they will not be reversed unless there is an abuse of discretion. (616 F.2d at 1014-15.) It is this language, taken out of context, upon which Ad-Ex erroneously relied. We also note that the district court in *Metropolitan* gave consideration to *Martin* as it related to due process concerns.

Zoning measures must observe due process. (See *Wells v. Village of Libertyville* (1987), 153 Ill. App. 3d 361, 505 N.E.2d 740.) We believe that *Martin* was premised on these due process concerns. Notice setting forth the time and place of the hearing to zone property is mandatory and jurisdictional, and any amendment passed in the contravention thereof is void. *North State, Astor, Lake Shore Drive Association v. City of Chicago* (1970), 131 Ill. App. 2d 251, 253, 266 N.E.2d 742; *Cosmopolitan National Bank v. City of Chicago* (1963), 27 Ill. 2d 578, 190 N.E.2d 352; *Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 182 N.E.2d 219.

The city ordinance here provides, in pertinent part:

> "Application for Variation and Notice of Hearing. An application for a variation shall be filed with the Board of Appeals. *** No more than 90 days after filing such application, a hear-

ing shall be held on the application. Notice of such hearing shall be published at least once, not more than 30 nor less than 15 days before the hearing, in one or more newspapers published in the City of Chicago." Chicago Municipal Code ch. 194A, §11.7—2 (1988).

■ In our view the use of the term "shall" is mandatory, not merely directory. The notice requirements contained in the ordinance here are jurisdictional prerequisites which must be followed in order to vest the city with the power to vary its zoning ordinance. (See *Martin*, 54 Ill. App. 3d 42; *Kirk v. VIllage of Hillcrest* (1973), 15 Ill. App. 3d 415, 304 N.E.2d 452; *Village of Riverwoods v. County of Lake* (1968), 94 Ill. App. 2d 320, 237 N.E.2d 547.) The failure to give the requisite notice and to conduct a hearing renders a zoning change invalid for lack of jurisdiction. See *Village of Riverwoods*, 94 Ill. App. 2d at 327 (and cases cited therein); see also *Scanlon v. Faitz* (1979), 75 Ill. 2d 472, 389 N.E.2d 571 (issuance of building permits pursuant to variance did not estop village from preventing construction where village failed to comply with notice requirements for variance hearings).

■ Here, this was not simply an irregular exercise of the City's power; the City had no power absent compliance with the notice and hearing requirements. The City's attempt to do by agreement that which could only be done by following the appropriate procedure is not valid. If the zoning change would otherwise have been illegal and void for lack of notice and a hearing, having it incorporated in a settlement agreement " 'will not breathe legal life into it.' " *Suski v. Mayor & Commissioners of the Borough of Beach Haven* (1975), 132 N.J. Super. 158, 164, 333 A.2d 25, 29, quoting *Midtown Properties, Inc. v. Township of Madison* (1961), 68 N.J. Super. 197, 206, 172 A.2d 40, 45.

Like in *Martin*, the parties' agreement to vary the setback requirement would amend the ordinance by modifying the existing setback requirement. Since the City was without jurisdiction to vary the zoning ordinance, the provision in the agreement providing for the variance is void and unenforceable. It necessarily follows, then, that the City is not estopped from asserting its *ultra vires* defense. Finally, since we have determined that the agreement was void from its inception, it could not be ratified by the City's subsequent conduct.

In reaching this conclusion we are mindful of the financial loss to Ad-Ex in reliance on the settlement agreement. However, as we have stated earlier, a party conducting business with a corporation is presumed to have knowledge of the limitations on the powers of the cor-

poration. Significantly, the obligatory notice and hearing provision is designed to protect the citizens from the whims of their city fathers. It is this consideration which outweighs both any financial loss to Ad-Ex and the desire of the city government to avoid the agreement.

Accordingly, we reverse the orders of the circuit court.

RIZZI and WHITE, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE FREEMAN* delivered the opinion of the court:

Petitioner, Ad-Ex, has filed a petition for rehearing in the above-captioned cause requesting this court to reconsider its reversal of the judgment which held the settlement agreement void *ab initio*. In support of its petition, Ad-Ex advances three arguments. For the reasons stated below, we deny the petition.

Ad-Ex first contends that neither this court nor the trial court had jurisdiction to consider the City's motion to set aside the settlement agreement. We disagree.

Ad-Ex maintains that the agreement was more than a contractual arrangement between the parties; "it was a Stipulation and Agreement in the 34 consolidated suits brought by Ad-Ex against the city, entered in conjunction with and at the same time as a February 24, 1989 Court order embodying, approving and enforcing the Agreement," and dismissing the suits with prejudice. As such, the order was a final judgment.

Ad-Ex then asserts, and we do not find otherwise, that the City did not seek to vacate the February 24 order until more than seven months later (October 4, 1989) when it filed its motion to set aside the agreement. It argues that since the City failed to file either a notice of appeal or a post-trial motion to vacate the February 24 order within the 30-day limitation period (107 Ill. 2d R. 303(a)(1)), neither the trial court nor this court had jurisdiction to consider whether the agreement should be set aside.

Ad-Ex correctly maintains that this court has a duty to consider its jurisdiction and dismiss the appeal if it is determined that jurisdiction is lacking. In its petition, Ad-Ex concedes that it did not raise this issue on appeal, and, we note, it has not cited this court to any place in the record to show that it was raised below. That notwith-

---

*Justice Freeman authored this opinion prior to his election to the Illinois Supreme Court.

standing, it now urges this court to consider the issue.

■ We believe that the agreement and the court's order which incorporated that agreement was the equivalent of a consent decree. A consent decree is not a judicial determination of the rights of the parties, nor does it purport to represent judgment of the court. It is merely the court's recordation of the private agreement of the parties. (*People ex rel. Thomas v. Village of Sleepy Hollow* (1981), 94 Ill. App. 3d 492, 495, 418 N.E.2d 466; *Kandalepas v. Economou* (1989), 191 Ill. App. 3d 51, 547 N.E.2d 496.) While, generally, it has been held that consent decrees are not final appealable orders (see *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 48, 360 N.E.2d 551; *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 442-43, 292 N.E.2d 154; *Jackson v. Ferolo* (1972), 4 Ill. App. 3d 1011, 1014, 283 N.E.2d 247), a dismissal order entered pursuant to a settlement agreement is a final order, relief from which requires timely filing of a motion to vacate (see *Garcia v. Lozada* (1978), 58 Ill. App. 3d 875, 374 N.E.2d 1078; *Jackson v. Schencker & Schencker* (1986), 145 Ill. App. 3d 232, 494 N.E.2d 669; see also *Prairie Material Sales, Inc. v. White Diamond, Inc.* (1987), 157 Ill. App. 3d 779, 510 N.E.2d 1236).

■ Generally, a court lacks power to modify, set aside or vacate a final decree 30 days after its rendition. (*Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 790, 424 N.E.2d 911.) However, even where jurisdiction has been lost after the passage of the 30 days following the dismissal, the parties may be deemed to have revested the court with personal and subject matter jurisdiction. (*People v. Kaeding* (1983), 98 Ill. 2d 237, 240, 456 N.E.2d 11; *Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 49, 97 N.E.2d 817.) "Loss of jurisdiction through the passage of time is [merely] a technical objection, which may be waived by voluntary participation of the parties." *Comet*, 98 Ill. App. 3d at 792; *Faust v. Michael Reese Hospital & Medical Center* (1979), 79 Ill. App. 3d 69, 72, 398 N.E.2d 287.

■ ■ The factors essential to revesting of jurisdiction are (1) active participation of the parties without objection (2) in further proceedings inconsistent with the prior order of dismissal. (*Stevens v. City of Chicago* (1970), 119 Ill. App. 2d 366, 372, 256 N.E.2d 56, citing *Ridgely*, 409 Ill. 46, 97 N.E.2d 817; *Cruz v. Columbus-Cuneo-Cabrini Medical Center* (1990), 194 Ill. App. 3d 1037, 551 N.E.2d 1345.) Conduct which is inconsistent with the dismissal order is any which can be fairly construed as an indication that the parties do not view the order as final and binding. *Gentile v. Hansen* (1984), 131 Ill. App. 3d 250, 255, 475 N.E.2d 894. See *Esin v. Liberty Mutual Insurance*

*Co.* (1981), 99 Ill. App. 3d 75, 424 N.E.2d 1307 (appearance, briefing, argument on motion for summary judgment); *Faust*, 79 Ill. App. 3d 69, 398 N.E.2d 287 (participation in appeals).

Ad-Ex, relying on *Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 470 N.E.2d 290, argues that the doctrine of revestment applies when neither party objects to further proceedings and *"both"* seek to set aside the judgment. Since Ad-Ex was neither willing, nor sought to have the judgment set aside, and further, since it vigorously contested the City's delinquent motion to have the agreement set aside, the doctrine is inapplicable. We disagree.

Initially we note that Ad-Ex misapprehends *Archer*. The *Archer* court, in determining the inapplicability of the doctrine in that case, distinguished *People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11, stating that in *Kaeding* "neither party objected to further proceedings in that court and both sought to set aside the judgment." (*Archer*, 103 Ill. 2d at 539.)A reading of *Kaeding* reveals that the *Archer* court's characterization of the *Kaeding* parties' agreement to set aside the judgment refers to the nonmovant's conduct in failing to object to the exercise of the court's jurisdiction and actively participating in the proceedings.

Ad-Ex never contested the trial court's jurisdiction. The basis of its argument below centered on the theory of detrimental reliance. Subsequent to the filing of the City's October 4 motion, both parties submitted briefs on the issue and participated in a hearing. Ad-Ex appeared and presented testimony concerning the fact that it had expended funds in reliance on the agreement and vigorously argued that the terms were valid and enforceable.

■■ In the trial court, and here on appeal, neither party regarded the dismissal order as final. Ad-Ex's conduct, contrary to its present position, was inconsistent with the prior order of dismissal as final and binding. (See *Vulcan Metals Products, Inc. v. Schultz* (1989), 180 Ill. App. 3d 67, 535 N.E.2d 933 (where party failed to object to jurisdiction prior to appeal, and actively participated in further discovery and in a two-day trial, conduct served to revest trial court with jurisdiction).) Therefore, the trial court's November 2, 1989, order, denying the City's motion to set aside the agreement, was the true final order dismissing the action and the appeal taken therefrom was properly reviewable. See also *Ridgely*, 409 Ill. 46, 97 N.E.2d 817 (plaintiff's failure to object to jurisdiction and appearing generally in opposition to defendant's motion waived jurisdictional defect rendering court's latter order the true final order).

Ad-Ex, quoting *Sears v. Sears* (1981), 85 Ill. 2d 253, 260, 422

N.E.2d 610, further argues that a post-trial motion does not revest jurisdiction where the motion "was about whether the judgment should be set aside." In *Sears*, one of the parties moved to reopen a judgment on the ground that he had justifiably not known of a hearing which proceeded on the other party's evidence alone and had been the basis of the next day's judgment. A second motion was filed wherein the party made the same argument in greater detail and the court heard evidence about who had said what to whom and what the moving party should have known about the hearing. On appeal of the denial of his motion, the supreme court held that the motion did not concern the merits of the judgment; the participants did not ignore the judgment and start to retry the case, thereby implying by their conduct their consent to having the judgment set aside. Contrarily, the hearing was about whether the judgment should be set aside.

Ad-Ex's argument in opposition, which specifically addressed the validity of the terms of the settlement agreement, did in fact concern the merits of the judgment. In *Sears*, unlike here, the moving party's attack, as well as the opponent's response, addressed only the procedural defects, not the substance of the judgment. Moreover, as the court stated in *Ridgely*, "[a]s all further proceedings upon the merits of a previously dismissed action are inconsistent with a prior order dismissing the action, it follows that any further proceeding upon the merits of a cause operates to nullify the order of dismissal." 409 Ill. at 50.

Finally, Ad-Ex concedes that under certain circumstances, failure to contest jurisdiction can constitute waiver of jurisdictional defects. That notwithstanding, it argues that waiver should not be applied in this instance because, "without exception, [it] objected to the City's motion to set aside the Agreement."

Our review of the record has revealed no instance where Ad-Ex objected to jurisdiction. We are not inclined, merely because of its detrimental reliance argument, to exempt it from waiver of the jurisdictional defect. Further, our research has revealed two cases, though rather antiquated, which have addressed the question of whether a petitioner may raise, for the first time in a petition for rehearing, the question of jurisdiction. In both cases the issue was deemed waived. See *Tree v. DeMar* (1954), 2 Ill. 2d 547, 558, 119 N.E.2d 767; *Zinser v. Sanitary District* (1912), 175 Ill. App. 9, 24-25.

Ad-Ex next contends that we improperly applied the *Martin* case to this appeal because certain facts therein made the case inapplicable. It first argues that *Martin* is inapplicable because the holding there was predicated on considerations of procedural due process.

Further, it argues that this court should have relied on the reasoning in *Mahoney* since it, like this case, involved a home rule municipality while *Martin* did not.

We are aware that *Martin* involved a non-home-rule municipality. However, we do not believe that notions of fairness and procedural due process, upon which we, like *Martin*, premised our decision, depend, for their validity and application, on the designation of municipalities as non-home rule.

Ad-Ex next argues that here, unlike in *Martin*, there had been prior notice. It has presented to this court copies of city council proceedings wherein the council approved 15 of the Ad-Ex signs constructed to date. It maintains that these proceedings gave interested parties notice of the proposed construction of the signs and an opportunity to contest that construction. As evidence that the proceedings constituted proper notice, Ad-Ex points to the fact that in July 1989, Patrick Media filed suit against the City to prevent this construction.

 █ The record of city council procedures, offered now as proof of notice, was neither a part of the record on appeal, nor was it argued in Ad-Ex's brief or at oral argument. Rule 367(b) (107 Ill. 2d 367(b)) provides, in pertinent part:

> "(b) Contents. The petition shall state briefly the points claimed to have been *overlooked or misapprehended by the court ***.*"* (Emphasis added.)

New evidence, overlooked by Ad-Ex, not by this court, does not fall within the rule permitting rehearing on points "claimed to have been misapprehended or overlooked by [this] court" in its original opinion. (See *Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 387 N.E.2d 714, *cert. denied* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981.) A rehearing of an appeal is only granted for purposes of correcting errors which the court has inadvertently made, and the party cannot assign as error points or arguments which could have been raised on or before oral argument of the appeal. *Mid-Continental Realty Corp. v. Korzen* (1976), 40 Ill. App. 3d 133, 143-44, 351 N.E.2d 376 (supplemental opinion).

That notwithstanding, Ad-Ex, relying on *American National Bank & Trust Co. v. City of Chicago* (1971), 4 Ill. App. 3d 127, 280 N.E.2d 567, argues that this court may judicially notice these procedures since they qualify as either an ordinance, decision or rule of the city council and are matters of public record. See Ill. Rev. Stat. 1987, ch. 110, pars. 8—1001, 8—1002.

We note that the judicially noticed facts in *American National*, which had not been a part of the trial court proceedings, had not been

so included because the events had not occurred at the time of trial. Contrarily, here the proceedings in the trial court spanned in time from February 24, 1989, through November 1989. The city council procedures now offered occurred on September 23, 1987, March 8, 1989, and May 24, 1989. These procedures, unlike the facts in *American National Bank*, having occurred prior to and during the trial court proceedings, could have been presented below. See also *People ex rel. Carey v. Starview Drive-In Theatre, Inc.* (1981), 100 Ill. App. 3d 624, 628, 427 N.E.2d 201 (reviewing court stated absent allegation of mootness, judicial notice could not be extended to permit the introduction of new factual evidence not presented to trial court); *Ashland Savings & Loan Association v. Aetna Insurance Co.* (1974), 18 Ill. App. 3d 70, 309 N.E.2d 293. *Nameoki Township v. Cruse* (1987), 155 Ill. App. 3d 889, 508 N.E.2d 1080 (reviewing court judicially noticed annexation ordinance where the ordinance was enacted subsequent to the filing of the appeal and defendants moved to dismiss the appeal on grounds of mootness).

■■■ However, even assuming that we may judicially notice these proceedings, we conclude that they did not serve to give the requisite prior notice of the variance. First, these proceedings were for the purpose of ordering that permits be issued for construction of 15 Universal (Ad-Ex) signs, and included orders for other outdoor advertising companies as well. In each order the council required that the signs be constructed in compliance with "applicable provisions of Chapter 194A of the Chicago Zoning Ordinance and all other applicable provisions of the Municipal Code of the City of Chicago governing the construction and maintenance of outdoor signs, signboards and structures." No mention is made in the orders of the variance of the setback requirement. Approval of permits to construct in compliance with the existing ordinances is not notice of intent to vary those ordinances.

Secondarily, given the language in the report of the council proceedings, we reject Ad-Ex's argument that the filing of the Patrick Media lawsuit evidenced prior notice. Further, contrary to Ad-Ex's argument, Patrick Media's suit, which was filed three months after the last council proceeding, did not contest the council's orders in these proceedings, but rather the City's authority to enter into the settlement agreement.

■■■ Ad-Ex's third and final contention is that our opinion has failed to provide adequate direction to the trial court. Generally, the effect of a reversal is to abrogate the judgment and leave the case as it stood prior to the judgment. (*People ex rel. Krych v. Birnbaum*

(1981), 101 Ill. App. 3d 785, 791, 428 N.E.2d 974.) Therefore, having determined that the agreement here was void *ab initio*, the consent order, which was premised on that agreement, was a nullity and the parties stand in the position they were in prior to entry of the order. Having thus stated the rule, we express no further opinion as to the parties' rights to have the case reinstated. That determination we leave, in the first instance, to the parties and the court below.

For the foregoing reasons, this court's decision reversing the trial court's judgment will stand.

Reversed.

RIZZI and WHITE, JJ., concur.