Otis GOSNELL, Sandra Gosnell,
and Supreme Supplies, Inc.,
Plaintiffs–Appellants,

v.

CITY OF TROY, ILLINOIS, et
al., Defendants–Appellees.

No. 94–3814.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1995.

Decided July 5, 1995.

Christine L. Olson, Bruce L. Carmen (argued), D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, William F. Kopis, Hinshaw & Culbertson, Belleville, IL, Alan D. Walker, Dailey & Walker, Granite City, IL, for plaintiffs-appellants.

John L. McMullin, Kenneth A. Slavens, Brown & James, St. Louis, MO, John P. Long (argued), Troy, IL, for defendants-appellees.

Before CUMMINGS, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1978 plaintiffs (collectively the Gosnells) filed a plat for the construction of a residential subdivision. The Troy City Council approved, and the Gosnells set to work. As construction crews dug a drainage swale in 1983, springs underneath began to fill it with water; crews tried to solve this problem by digging a wider swale, which did not work. Before long the subdivision had a lagoon. Al Hemann, chairman of the City's planning commission, complained to Mayor Ron Criley that the Gosnells were doing more excavation than their plat showed. After a meeting of the City Council, Criley directed the City's chief of police to tell the Gosnells to stop digging. When the crews kept on working, the police served a citation charging a violation of an ordinance forbidding the creation of unduly hazardous conditions: the City apparently thought that children might drown and that erosion of the shores would jeopardize a nearby sewer line. A second notice of violation charged the Gosnells with maintaining a nuisance.

Such charges ordinarily are resolved with dispatch, and by July 1983 three suits were pending: two commenced by the notices of violation and a third, filed by the City in state court, seeking an injunction against additional digging and an order requiring the Gosnells to fill the depression. The City withheld final building inspections pending a decision and ceased issuing new building permits; it filed in the property records a notice of pending litigation; it refused to supply water from the city's mains to new houses.

The Gosnells filed a counterclaim seeking an injunction of their own, one that would direct the City to inspect the houses, provide water, issue new permits without "extra-ordinary conditions," and in general to quit harassing them. The Gosnells' theory was that state and local law do not require residential plats to depict lakes, and that the lagoon did not pose any immediate danger. The state judge granted the Gosnells the relief they sought. The lagoon is there to this day, the houses have become homes, no one has drowned, and the sewer is intact. Yet here we are, 12 years later, adjudicating a federal suit, based on the Constitution of the United States, arising out of the same facts. The Gosnells say that the City's actions in mid–1983 started their project on a downward spiral and that in mid–1985 they gave the lender a deed in lieu of foreclosure. They want damages representing the profits they believe they could have made had the development prospered.

■■■ Delay of this magnitude (the case bears a 1991 docket number) usually draws a protest under the statute of limitations, which for cases in Illinois under 42 U.S.C. § 1983 is two years. *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276 (7th Cir.1989); *Palmer v. Board of Education*, 46 F.3d 682 (7th Cir.1995). Yet Troy did not plead the statute of limitations. Here is the history of the case in a nutshell: the Gosnells commenced a § 1983 action in state court in 1985, prosecuted it for five years, and then dismissed it on the eve of trial. An Illinois statute allowed the plaintiff one year following voluntary dismissal to start over. 735 ILCS 5/13–217 (amended by the Civil Justice Reform Amendments of 1995, Ill.Pub.Act 89–7, for claims accruing after March 8, 1995). The Gosnells did not like developments in state court and used the dismissal-refiling procedure to shop for a new judge. Troy did not welcome additional delay, so when the Gosnells refiled the City removed to federal court. When absorbing a state period of limitations for § 1983 actions, federal courts take the state's tolling and extension rules as well, unless they are hostile to federal interests. *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). See also *Hardin v. Straub*, 490 U.S. 536, 539,

109 S.Ct. 1998, 2001, 104 L.Ed.2d 582 (1989); *Chardon v. Fumero Soto*, 462 U.S. 650, 661–62, 103 S.Ct. 2611, 2618–19, 77 L.Ed.2d 74 (1983); *Board of Regents v. Tomanio*, 446 U.S. 478, 484–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975); *Hemmings v. Barian*, 822 F.2d 688, 691 (7th Cir.1987). The dismissal-and-refiling procedure that Illinois used until this year does not undermine any federal interest (the Supreme Court has not suggested that a state's period of limitations can be too long), so the suit is timely. Accord, *Beck v. Caterpillar, Inc.*, 50 F.3d 405, 406 (7th Cir.1995) (dictum).

Long delay is not the only oddity of this case. There is the problem of successive litigation. Three suits began in state court. All three gave the Gosnells an opportunity to present their constitutional arguments. If they used that opportunity, and prevailed, there is no occasion for federal litigation. If they used the opportunity, and lost, then successive litigation is avoided by the doctrine of issue preclusion (collateral estoppel). And if they withheld their federal arguments from the state tribunals, then it is too late to assert them now under the doctrine of claim preclusion (res judicata). Yet, as is so commonly true, the defendant bypassed arguments based on preclusion. See David P. Currie, *Res Judicata: The Neglected Defense*, 45 U.Chi.L.Rev. 317 (1977). Whatever limited power we may possess to raise it on our own in order to avoid adjudicating constitutional claims does not justify bailing the defendants out, because the status of the state litigation is hazy.

■■■ Neither side bothered to tell us what became of the proceedings the City instituted by citation. The City's suit seeking an injunction is a stronger candidate for preclusion. Having filed a counterclaim, the Gosnells could not omit any available line of argument without encountering preclusion in future litigation. *Radosta v. Chrysler Corp.*, 110 Ill.App.3d 1066, 1068, 66 Ill.Dec. 744, 746, 443 N.E.2d 670, 672 (1st Dist.1982); *Restatement (2d) of Judgments* § 21 (1982). See also *Davis v. Chicago*, 53 F.3d 801 (7th Cir.

1995); *Button v. Harden,* 814 F.2d 382 (7th Cir.1987); *Frier v. Vandalia,* 770 F.2d 699 (7th Cir.1985); *Hagee v. Evanston,* 729 F.2d 510 (7th Cir.1984), all of which interpret the law of claim preclusion in Illinois. Yet although the Gosnells obtained an injunction against the City, the state's appellate court remanded for further proceedings. *Troy v. Gosnell,* 129 Ill.App.3d 1165, 96 Ill.Dec. 930, 491 N.E.2d 1390 (5th Dist.1984) (table). The appellate court vacated the dismissal of the City's claims because Troy had not received adequate notice of the subjects to be covered at a hearing, and with the Gosnells' own support the court later vacated the injunction so that all subjects could be reconsidered. The parties say that to this day the case lingers on the docket of the Circuit Court. What issues remain for decision?, we inquired at oral argument. None of the lawyers knew. Like the feud between the Hatfields and McCoys and the storied case of *Jarndyce v. Jarndyce,* this suit has lasted so long, and run through so many lawyers, that no one remembers what they are fighting about; all the parties know is that they remain locked in controversy. For our purposes, what matters is that a remand deprives the judgment of preclusive effect until a new final judgment has been entered. *People ex rel. Krych v. Birnbaum,* 101 Ill. App.3d 785, 791, 57 Ill.Dec. 294, 298, 428 N.E.2d 974, 978 (1st Dist.1981); see also *Willett Co. v. Carpentier,* 4 Ill.2d 407, 412, 123 N.E.2d 308, 311 (1954).

■ Fortunately the merits of the suit are easier than the procedural issues. The Gosnells have two principal themes: that the City's actions deprived them of substantive due process (an oxymoron) and procedural due process (a redundancy). First the judge entered a series of orders striking some affirmative defenses (the defendants presented 17, while neglecting principles of preclusion!). We dismissed as premature an appeal from these orders. 979 F.2d 1257 (7th Cir.1992). The individual defendants argued that the district court had not given them the benefit of qualified immunity; we thought that they misunderstood the district court's orders, which left that defense open. The district judge then held that the individual defendants are indeed entitled to immunity. Next the judge resolved the due process arguments in defendants' favor on the merits, granting summary judgment. This last order vitiates all dispute about the affirmative defenses and immunity, and we turn to the merits.

■ "Substantive due process" has the distinct disadvantage, from plaintiffs' perspective, of having been abolished in the late 1930s when the Supreme Court threw over *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). Economic substantive due process is not just embattled; it has been vanquished. *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 164–67, 94 S.Ct. 407, 412–14, 38 L.Ed.2d 379 (1973). See also *Marusic Liquors, Inc. v. Daley,* 55 F.3d 258, 261–62 (7th Cir.1995); *Mid–American Waste Systems, Inc. v. Gary,* 49 F.3d 286, 291 (7th Cir.1995); *National Paint & Coatings Ass'n v. Chicago,* 45 F.3d 1124, 1129 (7th Cir.1995); *River Park, Inc. v. Highland Park,* 23 F.3d 164, 166 (7th Cir.1994). The name lives on, but it is attached to a new doctrine, one that insulates fundamental rights from governmental intrusion. Some things a government cannot do at all, no matter the justification. The Gosnells do not contend that Troy interfered with their fundamental rights, a sound concession. A municipality may bring residential development to a halt for strong reasons or weak reasons. If the latter, the municipality has to pay for the privilege. *Dolan v. Tigard,* — U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). But act it may. Businesses must make their arguments under the takings clause and the rational-basis component of equal protection analysis, something the Gosnells have not tried to do.

■ We have on occasion observed that substantive restrictions on public power may apply through the due process clause as complements to the restriction on taking private property for public use without just compensation—which, after all, has been applied to the states through the due process clause. *Chicago, Burlington & Quincy R.R. v. Chi-*

*cago,* 166 U.S. 226, 233–41, 17 S.Ct. 581, 583–86, 41 L.Ed. 979 (1897). See *Gamble v. Eau Claire County,* 5 F.3d 285, 286–87 (7th Cir. 1993). A whimsical state decision that deprives property of value either acts as a taking and so is compensable under this strand of due process analysis or confiscates property for private use, violating a negative implication of the takings clause. *Coniston Corp. v. Hoffman Estates,* 844 F.2d 461, 464–68 (7th Cir.1988); *Schroeder v. Chicago,* 927 F.2d 957, 960–61 (7th Cir.1991). Sifting such claims is the office of the "irrational action" theme that appears in some of our business-regulation cases. E.g., *Pro–Eco, Inc. v. Board of Commissioners,* 57 F.3d 505, 514 (7th Cir.1995). A municipality that acts irrationally has to make a choice: desist or pay. Again, however, the Gosnells do not try to show that the City's actions amounted to a taking without just compensation, and they do not argue that there has been a taking for private use. The assertions the City advanced—that the builders exceeded the permission given when the plat was approved, that the lagoon was a nuisance, and that the open water would endanger children (leading the City to take steps that would prevent the occupation of the houses)—may or may not be correct, but they do not lead us to break out giggling. Abating nuisances is a proper function of local government. If as the Gosnells say the City misunderstood the significance of the plat under state law, then they should be in state court; the due process clause does not require a state to implement its own law correctly. *Nordlinger v. Hahn,* 505 U.S. 1, 16 n. 8, 112 S.Ct. 2326, 2335 n. 8, 120 L.Ed.2d 1 (1992); *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 202, 109 S.Ct. 998, 1006–07, 103 L.Ed.2d 249 (1989); *Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 402–03, 88 L.Ed. 497 (1944); *Evans v. Chicago,* 10 F.3d 474, 481 (7th Cir.1993) (en banc); *Archie v. Racine,* 847 F.2d 1211, 1215–18 (7th Cir.1988) (en banc). The Constitution does not insist that a local government be *right;* whether its acts were proper in light of its concerns are staples of litigation under state law and inverse condemnation, and we reiterate the message of *River Park, Coniston,* and many other cases that developers cannot move land-use disputes to federal court by crying "substantive due process." That doctrine is not "a blanket protection against unjustifiable interferences with property. That way *Lochner* lies." *Schroeder,* 927 F.2d at 961.

As for due process in its proper sense—which is to say, notice and an opportunity to be heard—that's what the citations and civil suit were *for.* The City issued summons, the original sense of "process," see Jurow, *Untimely Thoughts: A Reconsideration of the Origins of Due Process of Law,* 19 Am.J.Legal Hist. 265 (1975), and invited the Gosnells to court. Three times. They appeared and made counterclaims. A state court resolved the issues, at least initially in the Gosnells' favor. What more does due process require? According to the Gosnells, it requires notice before the City could quit providing final inspections and hooking up water. The panel that heard the first appeal wrote that "Criley withheld two building inspections of the Gosnells' buildings and refused to turn on the water at one of the houses. In September, the City Council voted not to permit any further final building inspections at the Gosnells' subdivision, or issue them any new building permits, until the lawsuit was resolved or the Gosnells erected a fence around the lake." 979 F.2d at 1259. By September 1983 the civil action was under way; it is not clear what purpose would have been served by hearings divorced from, rather than included within, the litigation. At all events, if the City acted precipitously, the opportunity to complain to the state court supplied all the process due under the circumstances. See *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Easter House v. Felder,* 910 F.2d 1387 (7th Cir.1990) (en banc).

Although the Gosnells protest that this principle does not apply when a governmental body acts deliberately, as the City Council did in voting to stop inspections, they overstate the effect of *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). At least twice the Court has applied *Parratt* or a close cousin to decisions reflecting governmental policy. *Williamson County Regional Planning Commission v. Ham-*

*ilton Bank,* 473 U.S. 172, 197–200, 105 S.Ct. 3108, 3122–23, 87 L.Ed.2d 126 (1985), concludes that the opportunity to litigate in state court after the fact supplies all the process due for claims of inverse condemnation by excessive regulation. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), reaches the same conclusion for corporal punishment in the schools. *Zinermon* did not disapprove either decision, and *Williamson County* provides an apt parallel to our case. The Gosnells complain about meddlesome regulation that diminished the value of their property; they do not use the language of takings, but we held in *Gamble* that a landowner cannot avoid *Williamson* by switching constitutional nomenclature and arguing "substantive due process." 5 F.3d at 287–88. *River Park* added that "procedural due process" would be handled the same way. 23 F.3d at 167. The Gosnells had ample opportunity for hearings, they used their opportunities, and they won. That hardly gives us reason to contract the scope of *Williamson* and *Parratt.*

The constitutional case is over. We hope that the parties will attend to their litigation in state court and end this festering dispute.

AFFIRMED.