**TJ's SOUTH, INC., Plaintiff,**

v.

**The TOWN OF LOWELL, et al., Defendants.**

No. 2:94–CV–203.

United States District Court, N.D. Indiana, Hammond Division.

Aug. 4, 1995.

Jamie Golden Sypulski, Law Offices of Gerhard E.W. Kelter, Jr., Chicago, IL, for plaintiff.

Bruce P. Clark, Bruce P. Clark and Associates, Munster, IN, Mary K. McGahey, Merlo, Kanofsky, and Brinkmeier, Chicago, IL, James L. Clement, Jr., Hoeppner, Wager & Evans, Merrillville, IN, for defendants.

### ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Defendants on June 5, 1995. For the reasons set forth below, the Motion is **DENIED**.

### BACKGROUND

Plaintiff, TJ's South, Inc. ("TJ's") currently operates a tavern in Lowell, Indiana. Defendants are The Town of Lowell ("Lowell"), The Lowell Town Council ("Council"), The Lowell Board of Zoning Appeals ("Board"), and individual members of the Council and the Board (the individuals are all sued in their official capacities).

The following facts are drawn from the Complaint and are accepted as true for purposes of this dismissal motion:[1] Sometime in May 1993, TJ's submitted to Defendants a written application for a special exception to Lowell's zoning ordinance (the tavern had not yet opened for business). The special exception would have allowed TJ's to feature disk jockeys, musical groups, dance instruction, and other forms of live entertainment in its tavern. The application complied with Lowell's procedural requirements. On May 20, 1993, the Board denied the application on the grounds that the proposed entertainment would create noise and parking problems and might diminish the value of property adjacent to the tavern. Four days later, the Council affirmed the Board. A little over three months later, TJ's opened its tavern for business.

After roughly six more months went by, the Council amended Lowell's zoning ordinance. The portions of the ordinance submitted by TJ's with its Complaint do not precisely show what effect the amendment had, either in general or specifically with respect to TJ's. However, it seems that the amendment added a definition of "entertainment" and still required TJ's to obtain a

---

1. As is proper on a motion to dismiss, the Court has limited its inquiry to the face of the Complaint and the inferences it fairly supports. The parties have perhaps flirted with drawing matters outside of the Complaint into this Motion, but not to an extent that compels or enables the Court to treat the Motion as a summary judgment motion.

special exception to present live entertainment.

In April 1994, TJ's submitted to Defendants a second written application for a special exception to present entertainment as defined in the amended ordinance. The application also fully complied with Lowell's procedural requirements. On April 21, 1994, the Board denied the application on the grounds that the proposed entertainment would cause parking and noise problems and might diminish the value of properties adjacent to the tavern. About two weeks later, the Council affirmed the Board's denial. The Council's reason for affirming, however, was not because TJ's "did not comport with the definition of 'entertainment' under the [amended ordinance], but because of 'public nuisance.'" (Compl. ¶ 23)

At a time not specified in the Complaint, another Lowell tavern called "Alaskan Pipeline" submitted to Defendants a written application for a special exception to present entertainment similar to what TJ's had sought to present. On June 16, 1994, the Board granted the special exception, setting certain conditions. In meeting minutes, the Board gave its reasons for granting Alaskan Pipeline the special exception. Essentially, the Board indicated that the live entertainment would be only intermittent as well as unique to the area immediately surrounding Alaskan Pipeline, would be presented only indoors, would not cause prohibitive parking problems, and that Alaskan Pipeline would use a security guard during entertainment events. About ten days later, the Council affirmed the Board's granting of the special exception to Alaskan Pipeline.

TJ's Complaint contains five counts. Although TJ's did not explicitly identify the specific legal theory underlying each count, the language of the Complaint suggests the following: Count I alleges that Lowell's amended ordinance is unconstitutionally vague on its face in violation of the First Amendment as incorporated through the Fourteenth Amendment; Count II alleges that "[t]he Lowell Zoning Ordinance," presumably the amended ordinance just mentioned, is facially overbroad and underinclusive in violation of the First Amendment;

Count III alleges that the ordinance constitutes a prior restraint on speech in violation of the First Amendment; Count IV alleges that the ordinance impermissibly infringes upon TJ's Fourteenth Amendment due process rights—this appears to be a procedural due process challenge, although a substantive due process challenge cannot be ruled out; and Count V alleges that Lowell is selectively and capriciously enforcing the ordinance against some businesses but not others, in violation of the First and Fourteenth Amendments. The vehicle with which TJ's asserts each of these counts is 42 U.S.C. section 1983. TJ's requests as relief items including (1) a declaration that portions of the Lowell zoning ordinance are unconstitutional under the First and Fourteenth Amendments, either on their face or as applied to TJ's; (2) an injunction barring Lowell from enforcing these portions of the ordinance; (3) damages; and (4) attorney's fees.

*DISCUSSION*

 When deciding a motion to dismiss, this Court must assume the truth of a plaintiff's well-pleaded factual allegations, making all possible inferences in the plaintiff's favor. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund,* 25 F.3d 417, 420 (7th Cir.1994); *Jenkins v. Heintz,* 25 F.3d 536, 537 (7th Cir.1994). This Court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Black v. Lane,* 22 F.3d 1395, 1403 (7th Cir. 1994). In order to prevail, a defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Veal v. First American Savings Bank,* 914 F.2d 909, 913 (7th Cir.1990).

Defendants argue that TJ's claims are not ripe because TJ's never sought state court review of the zoning decisions of the Board and Council. While case law might provide superficial support, this argument fails.

The cases fueling Defendants' argument begin with the Supreme Court's decision in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126

(1985). In *Williamson,* a bank and its predecessor in interest had sought to develop a tract of land in Tennessee. Frustrated by negative decisions and years of delay at the hands of local zoning officials, the bank sued in federal court. The case went to verdict, only to be ultimately dismissed by the Supreme Court as not ripe.

The Court first considered the bank's cause of action as a Fifth Amendment regulatory taking, i.e., action by government that, while not an outright physical appropriation of property, nonetheless deprives the property of economic value. *Id.* at 186, 105 S.Ct. at 3116. The Court actually never reached the merits of this theory. Instead, it concluded that even assuming the bank had stated a regulatory takings claim, the claim was not ripe. The Court observed that although the bank had submitted a plat for its tract that a local agency had rejected, the bank had not thereafter sought possible variances that would have eliminated some of the agency's objections. *Id.* at 187–88, 105 S.Ct. at 3117. Indeed, the bank declined to request variances at all, even though local regulations provided that if a developer submitted a plat indicating a feature that required a variance, the plat would be denied unless the developer applied for the variance. *Id.* at 190, 105 S.Ct. at 3118. The Court stressed that had the bank pursued variances, it might not have lost as much money or otherwise been injured by the agency's actions. *Id.* at 190–91, 105 S.Ct. at 3118.

The Court concluded that under these circumstances, the bank had "not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property." *Id.* at 186, 105 S.Ct. at 3116. The Court posited that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* As the Court has since noted, "[a] court cannot determine whether a regulation has gone 'too far' [i.e., has effected a regulatory taking] unless it knows how far the regulation goes." *MacDonald, Sommer*

*& Frates v. Yolo County,* 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986).

The *Williamson* Court took care to distinguish its ruling—which it maintained was squarely based on the ripeness doctrine— from a rule requiring exhaustion of administrative remedies. *Williamson,* 473 U.S. at 192, 105 S.Ct. at 3119. The Court acknowledged that a plaintiff generally need not exhaust administrative remedies before bringing a section 1983 claim. Yet the Court insisted that "[t]he question whether administrative remedies must be exhausted is conceptually distinct [ ] from the question whether an administrative action must be final before it is judicially reviewable." *Id.* According to the Court:

> While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Id.* at 193, 105 S.Ct. at 3120.

In addition to a lack of a final decision, the Court identified another reason why the bank's regulatory takings claim was not ripe. The Court stressed that the Fifth Amendment does not prohibit the government from taking private property altogether; rather, it merely prohibits the government from taking private property without justly compensating the owner. *Id.* at 194, 105 S.Ct. at 3120. Accordingly, "[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until [the owner] has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. at 3121. The Court noted that a procedure can be adequate even if it is available to the property owner only *after* the government takes the property. *Id.* Based on these principles, the Court ruled that the bank's claim was "premature" because the bank had not availed itself of Tennessee's

inverse condemnation procedure and therefore could not show that the procedure had failed to provide just compensation. *Id.* at 196–97, 105 S.Ct. at 3121–22; *accord MacDonald,* 477 U.S. at 350, 106 S.Ct. at 2566; *Gamble v. Eau Claire County,* 5 F.3d 285, 286 (7th Cir.1993).

Besides its takings analysis, the Court also addressed the bank's claim as an economic substantive due process claim, i.e., as wholly irrational action by the government with the economic effect of depriving the bank of property. Yet as with the takings claim, the Court found it unnecessary to reach the merits; it labeled the due process claim "premature" because the bank had not applied for variances, meaning that it had not yet obtained a final decision on its plat. *Williamson,* 473 U.S. at 200, 105 S.Ct. at 3123.

In sum, *Williamson* has three prominent thrusts. First, the bank's takings claim was not ripe because the bank had never obtained from the local agency a decision that established specifically and finally what the agency's position was with regard to the bank's development plan. Second, the bank's economic substantive due process claim was not ripe for the same reason. Third, the takings claim was not ripe for the additional reason that the bank had not pursued state court procedures for obtaining compensation from the government in the event of a taking.[2]

The Seventh Circuit has issued several decisions that touch on *Williamson;* such decisions are the basis for Defendants' dismissal motion. The Seventh Circuit has reaffirmed that plaintiffs bringing federal suits alleging that local zoning has offended the takings clause or economic substantive due process must meet the ripeness requirements set forth in *Williamson, see Gamble,* 5 F.3d at 286, and has also added equal protection claims to this list, *Unity Ventures v. County of Lake,* 841 F.2d 770, 774 (7th Cir.), *cert. denied,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). Perhaps testing the limits of the express holding of *Williamson,* the Seventh Circuit now appears to require that beyond obtaining an *agency* final decision, a plaintiff bringing a zoning claim based on economic substantive due process typically must pursue state *court* remedies (like an inverse condemnation action) before coming to federal court. *Gamble,* 5 F.3d at 288; *cf. Unity Ventures,* 841 F.2d at 775 (seeming to assume that for an economic substantive due process claim the *Williamson* final decision is a decision by the local agency). Indeed, the *Gamble* court went so far as to conclude that despite what the Supreme Court insisted, in *Williamson* it applied an exhaustion of remedies requirement to section 1983 claims. 5 F.3d at 288. The Seventh Circuit also appears to have concluded that for zoning-based *procedural* due process claims, state court review of zoning decisions typically supplies sufficient procedures. *Gosnell v. City of Troy,* 59 F.3d 654, 658–59 (7th Cir. 1995); *River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 167 (7th Cir.1994) (citing *Graff v. Chicago,* 9 F.3d 1309, 1323–25 (7th Cir.1993) (*en banc*), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994)).

 Several themes are manifest in these Seventh Circuit cases: a plaintiff bringing any takings claim must pursue a state inverse condemnation suit before suing in federal court; a plaintiff bringing a zoning-based economic substantive due process claim typically must do the same; and state court review may provide sufficient procedure for a zoning-based procedural due process claim. The first two requirements rest on notions of ripeness or exhaustion of remedies, threshold characteristics that do not go toward what we typically consider the "merits" of a claim. The third requirement rests more on the merits of procedural due process claims, in that it delineates what process is sufficient.

Certain of these themes have no immediate application here. For now, the Court will accept TJ's argument that it is not bringing a

---

**2.** *See also MacDonald,* 477 U.S. at 350, 106 S.Ct. at 2567 ("Whether the inquiry asks if a regulation has 'gone too far,' or whether it seeks to determine if proffered compensation is 'just,' no answer is possible until a court knows what use, if any, may be made of the affected property.");

*East–Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n,* 888 F.2d 1573, 1575 (11th Cir.1989), *superseded on other grounds,* 896 F.2d 1264 (11th Cir.1989) (ascertaining these three aspects and the distinctions among them as existing in *Williamson*).

takings claim. Although in Count IV TJ's alleges it has been denied "due process," it is not clear whether TJ's refers to the substantive or procedural kind; for now, the Court will assume that TJ's makes no procedural due process claim.[3]

■ This leaves any "substantive due process" claim that TJ's advances in Count IV or elsewhere in its Complaint. The Court must first determine which aspect of the broad term "substantive due process" is involved here. The Court has prefaced "substantive due process" with the word "economic" from time to time in this order. The "economic" qualifier signals a distinction among substantive due process claims that may not always be expressed by courts, but which matters here: the difference between fundamental rights (including First Amendment) due process and purely economic due process. The "substantive due process" claims in the cases above have been economic claims.[4]

Thus, TJ's, whose Complaint voices First Amendment claims, is not automatically out of federal court. No all-fours authority dictates that TJ's First Amendment claims, which it did not pursue in state court, must be dismissed for lack of ripeness. Still, the ripeness doctrine potentially applies to *any* brand of constitutional claim. As such, the principles behind *Williamson* and *Gamble* need be examined before letting this First Amendment case proceed.

As noted, Defendants argue that TJ's was required to seek state court review of the adverse zoning decisions before filing in federal court. This raises the question of whether TJ's must obtain a final decision at merely the agency level, or instead at the more advanced state court level, before bringing a zoning-based First Amendment claim in federal court.

Based on the lack of a final *agency* decision, the *Williamson* Court deemed both the bank's claims, takings and economic substantive due process, not ripe. In so doing, the Court stressed that it could not determine whether and to what extent the bank's property had been constitutionally "taken" or otherwise infringed upon without an administrative final decision. Also, the Court ruled that the takings claim was unripe due to the bank's failing to pursue a state court inverse condemnation suit; however, the Court did not address the due process claim on this point.

The apparent reason why the Court imposed an added dimension to the ripeness requirement for the takings claim is the nature of the takings clause. Under the clause, the state has the power to take private property for public use, and since "public use" is so broadly defined, in most cases the only question will be whether the compensation to the property owner is just. *See Gamble*, 5 F.3d at 287. Indeed, the state may justly compensate the owner even after the taking. As such, a property owner typically cannot demonstrate an improper taking until after the owner has completed the state's compensation process and is dissatisfied, meaning the owner's claim will rarely be ripe before then. *See Williamson*, 473 U.S. at 194–97 & n. 14, 105 S.Ct. at 3120–22 & n. 14.

---

**3.** Defendants have not recognized the possible ambiguity in Count IV, let alone tried to resolve it and establish the consequences. In addition, contrary to what Defendants might claim, this Court does not believe that *River Park* alone is dispositive on whether the procedures available to TJ's in this case are sufficient. Any question of sufficiency will have to be resolved on the basis of more facts and law than the record and Defendants' arguments present thus far. For these reasons, the Court will let the issues possibly raised by the procedural due process aspect of Count IV lay for now. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 917–18 (7th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995) (suggesting that a court need not rule on "blunderbuss" arguments);

*Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir.1984) (refusing to consider an argument not fully briefed).

**4.** Of course, the Seventh Circuit cases have applied (if not expanded) the *Williamson* ripeness rule to cover what they labeled Fourteenth Amendment "substantive due process" claims, which, in the broadest semantic sense, include First Amendment claims—the vehicle for bringing such a claim against a nonfederal defendant is the substantive aspect of the due process clause of the Fourteenth Amendment. However, it seems apparent that the Seventh Circuit was addressing economic due process, not fundamental rights due process.

Although this ripeness precept is apparently rooted in the particular nature of takings claims, in *Gamble,* the Seventh Circuit applied the precept to an economic substantive due process zoning claim.[5] The *Gamble* court acknowledged that for such a claim, the remedy is not just compensation, but damages or return of the property itself, which are by no means equivalent to the market value contemplated by just compensation. 5 F.3d at 286. Although it would seem that damages and property return might not inherently be after-the-fact remedies as is just compensation, the *Gamble* court concluded that like the takings plaintiff, the economic due process plaintiff in a zoning case must go to state court before federal court. *Id.* at 288; *see Hartland Sportsman's Club, Inc. v. Town of Delafield,* 35 F.3d 1198, 1203 (7th Cir.1994) (interpreting *Gamble* this way). The court did not explain its rationale in detail. Indeed, it closed with the broad pronouncement that "whatever constitutional rights the plaintiff may have had she lost by failing to pursue state judicial remedies." 5 F.3d at 288.[6]

This Court concludes that the rationale behind *Gamble* rested on the Seventh Circuit's view of zoning-based economic due process and takings claims as representing substantially equivalent theories that deserve equivalent treatment. The Seventh Circuit seems to view economic due process claims as plaintiffs' thinly masqueraded attempts to get around the disadvantages of zoning-based takings claims. *See Gamble,* 5 F.3d at 288; *River Park,* 23 F.3d at 167. Indeed, after *Williamson,* a plaintiff wishing to bring a so-labeled takings claim in federal court will usually if not always have to go to state court first. Plaintiffs also may have difficulty in proving a constitutional taking based on a zoning measure as opposed to an outright physical appropriation. For some plaintiffs, just compensation in the form of market value may not be the remedy of choice.

Whether rightly or wrongly, these circumstances perhaps give businesses an incentive to challenge unfavorable zoning under a theory other than a takings claim (although how much of an incentive is questionable given that they may run smack into relaxed scrutiny). Apparently, economic due process has become the other theory of choice—but the Seventh Circuit, for whatever reasons, is not buying. "Call it what you want, plaintiffs" the Seventh Circuit seems to say, "we know it is essentially a takings claim and we will assess its ripeness accordingly." *See Gamble,* 5 F.3d at 288; *River Park,* 23 F.3d at 165, 167; *Gosnell,* 59 F.3d at 658–59.

This Court doubts that the Seventh Circuit would lump First Amendment challenges in with takings claims as it appears to have done with economic due process claims. The economic due process claim is essentially a business owner's cry that the government is making business less profitable. Yet by design, the typical zoning law burdens some economic activities in order to promote others. The garden-variety economic regulation represented by such zoning often passes constitutional muster easily if it does not impact a fundamental right or suspect class. Perhaps drawing on this notion, the Seventh Circuit has made it clear that it considers generic challenges to generic zoning laws to be best relegated to the state courts, whether because they are not ripe, or violate an exhaustion of remedies rule implicitly created in *Williamson,* or only tenuously relate to tenuous federal rights, or are doomed on the merits. *See id.*

In contrast, TJ's claims, although perhaps ultimately tied to its pocketbook, rest on the fundamental rights embodied in the First Amendment. Taken as pled, the claims in no way constitute a takings claim in disguise. As such, the Seventh Circuit's appar-

---

**5.** Since the court acknowledged that the economic due process argument might not even have a basis in the Constitution, 5 F.3d at 287, what the court said about economic due process zoning claims might approach dicta. *See also Gosnell,* 59 F.3d at 657 (stating that "[e]conomic substantive due process is not just embattled; it has been vanquished.")

**6.** In *Gamble,* the plaintiff had advanced only a takings and an economic due process claim. 5 F.3d at 285. Accordingly, this Court will not interpret the expansive phrase "whatever constitutional rights" in the quote above to apply to types of constitutional claims besides those two.

ently broad concept and dim view of takings claims do not apply.

Still, Defendants stress that the state court review that was available to TJ's is a part of the basic procedure for obtaining a special exception, meaning that TJ's cannot obtain a final decision under *Williamson* without going to state court. Under Indiana statute, a "person aggrieved by a decision of ... the legislative body [i.e., the Council]" on a zoning matter may obtain "review by certiorari" in the local "circuit or superior court" by petitioning within thirty days of the adverse decision. Ind.Code § 36–7–4–1003. The court may base its review on the face of the petition for certiorari and the legislative body's "return" to the petition, or the court may take additional evidence. *Id.* § 36–7–4–1009. Any decision by the court is appealable in the same matter as with civil cases generally. *Id.* § 36–7–4–1011.

Defendants argue that although certiorari review involves not just agencies but the courts, it is still part and parcel of the special exception process. Indeed, Defendants rely on one case ruling that because a certiorari proceeding is an extension of the agency decision process, a party petitioning for certiorari need not serve adverse parties personally with the petition, but may instead merely serve the parties' counsel of record in the agency proceedings. *Butler Toyota, Inc. v. Metropolitan Board of Zoning Appeals, Div. I,* 504 N.E.2d 271, 272–73 (Ind.1987). Thus, Defendants assert, TJ's claims are not ripe until it has pursued the certiorari procedure.

■ However, the only decisions reviewable under the certiorari procedure are final ones. The agency must have reached a final decision on the zoning matter, i.e., a decision that ends the agency proceedings and leaves nothing to be decided. *Downing v. Bd. of Zoning Appeals of Whitley County,* 149 Ind. App. 687, 274 N.E.2d 542, 544–45 (1971); *Schenkel v. Allen County Plan Comm'n,* 407 N.E.2d 265, 267–68 (Ind.App.1980). As such, only an agency decision that is already ripe in the sense described in *Williamson* will qualify for certiorari review. So, once a business obtains an agency zoning decision concrete enough to warrant certiorari review,

the business has also obtained a decision that is ripe under *Williamson.*

In addition to the foregoing, and most importantly, the rationale underlying *Williamson* does not dictate a dismissal for lack of ripeness here. The *Williamson* Court stressed that until the bank obtained the best final decision it could from the local agency, a trier could not reliably determine whether the bank had suffered a regulatory taking. This uncertainty about whether the bank had been constitutionally harmed at all fueled the *Williamson* Court's holding. In contrast, TJ's Complaint shows its alleged harm to be much more complete. It has twice applied to have entertainment in its tavern, and has twice been turned down in no uncertain terms by the highest authority short of the courts. This contrasts with *Williamson,* where the bank might have gained a much more favorable result with respect to the much more esoteric alleged harm of a regulatory taking if it had persevered and cooperated. *See Williamson,* 473 U.S. at 194 n. 13, 195 n. 14, 105 S.Ct. at 3120 n. 13, 3121 n. 14 (hinging the decision on the "nature of the constitutional right" embodied in the takings clause).

■ Moreover, the *Williamson* final-decision rule does not apply to a facial challenge. In addition to claiming that the Lowell ordinance has been unconstitutionally applied to it, TJ's claims that the ordinance might be unconstitutionally applied to most anyone, i.e., that it is unconstitutional on its face. Such a facial challenge is not susceptible to the ripeness requirements set forth in *Williamson. See Yee v. City of Escondido,* 503 U.S. 519, 532–35, 112 S.Ct. 1522, 1531–32, 118 L.Ed.2d 153 (1992); *MacDonald,* 477 U.S. at 351, 106 S.Ct. at 2567. Indeed, TJ's specifically attacks the Lowell ordinance on its face as an unconstitutional prior restraint, i.e., as an ordinance that facially bans entertainment without a government-granted permit. It certainly might be argued that any facial harm done by this ordinance was ripe by the time the ink on the ordinance was dry. In theory, TJ's could have attacked the Lowell ordinance on its face without ever having applied for a special exception. *City of Lakewood v. Plain Dealer Publishing Co.,*

486 U.S. 750, 764, 108 S.Ct. 2138, 2147, 100 L.Ed.2d 771 (1988).

In sum, TJ's not having sought certiorari review in state court does not render either its as-applied or facial First Amendment claims unripe. Still, Defendants also argue that TJ's has not obtained a final decision from the Board and Council, i.e., at the agency level. They maintain that TJ's simply failed to provide the Board and Council with information they needed to determine whether entertainment at TJ's will cause prohibitive problems.

Because it stresses lack of an agency decision, this argument ranges closer to the holding and ripeness principles of *Williamson* than does the argument that TJ's claims are not ripe without state court review. However, Defendants first raised this argument in their reply brief, thereby denying TJ's a fair opportunity to respond. Moreover, the argument rests on meeting minutes, which TJ's attached to its Complaint, and which summarized what input TJ's did and did not present regarding how it will minimize potential problems of entertainment in its tavern. These minutes were presumably prepared by Lowell officials, meaning that they represent merely the summary of what one side believes the other said; as such, their weight is limited.

In any event, the minutes of the meeting of April 21, 1994, actually depict TJ's representatives as providing significant if not overwhelming input to the Board regarding what TJ's would do to address problems possibly caused by entertainment at the tavern. TJ's expressed its willingness and intent to address parking, noise, and security problems that entertainment might pose. True, TJ's did not walk into the meeting boasting of a large private parking lot, state-of-the-art soundproofing in the tavern, and a security service under contract—but expending the effort and expense to accomplish all these things *before* obtaining a special exception might have been imprudent. In sum, the minutes suggest that through a combination of its written application and oral statements at the meeting, TJ's communicated enough information to the Board to allow it to make the final decision on the special exception

required by *Williamson*. This contrasts with instances where claims were not ripe because the plaintiff had refused to complete the entire course of the local agency's decision-making process. *See Williamson*, 473 U.S. at 190–91, 105 S.Ct. at 3118; *Unity Ventures*, 841 F.2d at 775–76.

*CONCLUSION*

For the foregoing reasons, the Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) is **DENIED.**