134 F.3d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles M. VORHEES, as Executor of the Last Will and
Testament of Helen V. Brach, a person presumed
dead, Plaintiff-Appellant,
v.
Kirk BROWN, Secretary of the Illinois Department of
Transportation, County of Dupage, a political subdivision of
the State of Illinois, City of Naperville, a municipality
organized under the laws of the State of Illinois, et al.,
Defendants-Appellees.
 No. 96-4109.
 United States Court of Appeals, Seventh Circuit.
 Argued May 28, 1997.
Decided Feb. 4, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied March 19, 1998.*
 
 Before Hon. Hon. WILLIAM J. BAUER, Hon. Hon. JOHN L. COFFEY, Hon. Hon. KENNETH F. RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 On June 30, 1995, Charles M. Vorhees ("Vorhees"), executor of the estate of Helen Brach, filed suit in the United States District Court for the Northern District of Illinois. Vorhees sought declaratory and injunctive relief under 28 U.S.C. § 2201, claiming that section 49.1 of the Illinois Aeronautics Act is "repugnant to the concepts of the Fifth Amendment to the Constitution of the United States and thereby and otherwise violative of the Fourteenth Amendment of it." The named defendants included Kirk Brown, Secretary of the Illinois Department of Transportation ("IDOT"); William L. Blake, Director of the IDOT Division of Aeronautics; the County of DuPage, Illinois; the City of Aurora, Illinois; the City of Naperville, Illinois; and the Naper Aero Club.
 
 
 2
 The defendants, citing a lack of subject matter jurisdiction, moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1). They argued that Vorhees' complaint did not satisfy the "case and controversy" requirement of Article III, section two, of the United States Constitution. The district court granted the motion with prejudice. Vorhees filed for appeal on December 11, 1996, and we affirm.
 
 BACKGROUND
 
 3
 The Brach estate holds an undivided, one-half interest in a 312-acre farm located in unincorporated DuPage County. The property is devoted to traditional farm uses, and is contiguous with the cities of Naperville and Aurora. Naperville has a reserved right to annex the eastern half of the property, while Aurora has a reserved right to the western half. The area surrounding the farm has been subject to significant recent development.
 
 
 4
 In 1956, a private airport was built adjacent to the farm. The airport's runway has its northern end abutting the southern boundary of the farm. Today, the airport is operated by the Naper Aero Club for the private use of the Club's members. Due to the proximity of the runway to the farmland, aircraft taking off from and landing at the airport necessarily traverse the farm at low altitude.
 
 
 5
 In 1989, attempting to prevent developers from constructing tall structures near airport runways that would interfere with aircraft flight paths, the Illinois legislature enacted an amendment to the Illinois Aeronautics Act which provided that "[n]o person may create or construct any airport hazard which obstructs a restricted landing area or residential airport ..." 620 I.L.C.S. 5/49.1. This particular piece of legislation was specifically drafted and adopted to deal with only three airports: the Naper Aero Club airport, a second airport located south of the town of Elgin in Kane County, and a third airport south of the town of Downers Grove in DuPage County. In fact, Illinois State Rep. Cowlishaw of Naperville specifically stipulated that the legislation "applies to only three very small privately owned airports in Illinois." 86th Gen. Assm. 40th Leg. Day May 12, 1989.[1]
 
 
 6
 Vorhees filed suit in 1995, seeking declaratory judgment in arguing that the statute in question was a "taking." Citing no "case or controversy," the district court dismissed, and Vorhees appeals.
 
 DISCUSSION
 
 7
 This Court reviews motions to dismiss for lack of jurisdiction over the subject matter de novo. Deveraux v. City of Chicago, 14 F.3d 328, 330 (7th Cir.1994). Facts and inferences are to be drawn in a light most favorable to the plaintiff. Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178-179 (7th Cir.1996).
 
 
 8
 The sole issue for consideration here is whether the plaintiff has established that his claim is sufficiently ripe for adjudication to satisfy the case and controversy requirement set forth in Article III, section two, of the United States Constitution. In general, in order for a dispute to be ripe for adjudication, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse interests, [citations omitted]. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." Deveraux, 14 F.3d at 331 (quoting Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 463-464, 81 L.Ed.2d 617 (1937)). If a case is not ripe for adjudication under Article III of the United States Constitution, federal courts lack subject matter jurisdiction over the case. Biddison v. City of Chicago, 921 F.2d 724, 726 (7th Cir.1991). In reviewing Vorhees' claim, the district court found that:
 
 
 9
 Those who seek to invoke injunctive relief must satisfy the jurisdictional requirement of the federal courts by alleging an "actual case or controversy." ... We find this area of the law to be clear. That is, regardless of whether this court has subject matter jurisdiction over plaintiff's claims, in the absence of an "actual, ongoing case or controversy", this court's jurisdiction does not extend to equitable relief claims.
 
 On appeal, the plaintiff argues that:
 
 10
 Illinois may not constitutionally deprive him ... of any part of that superadjacent to [his] land[] which [is] susceptible to use. Particular emphasis is given to the fact that the taking concerned is solely for the private usage of those privileged members of the Club and others having to do with their recreational hobby of flying small aircraft. Such constitutes a violation of Vorhees' ... Fifth and Fourteenth Amendment rights which by virtue of the premises is beyond cure other than through an invalidation of that statute of Illinois directed to such purpose. The harm done thereby is immediate and such cannot be ameliorated by speculation that somehow such may be proved to be less than that which would totally destroy the ability to utilize all of the property.
 
 
 11
 The Supreme Court's reasoning in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), is particularly relevant in this case. In Williamson, a real estate developer brought suit against a zoning commission, alleging that the commission had deprived the developer of its property without just compensation. 473 U.S. at 182-183, 105 S.Ct. at 3114-3115. The Court established a two-part test to determine when a takings claim is ripe for federal adjudication. Specifically, "a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186, 105 S.Ct. at 3116. In Williamson, because the respondent had not obtained a "final decision regarding the application of the zoning ordinance and subdivision regulations to its property, ... respondent's claim is not ripe." Id.[2] The second part of the Williamson test requires that a property owner "seek compensation through the procedures the State has provided for doing so." 473 U.S. at 194, 105 S.Ct. at 3120. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." 473 U.S. at 195, 105 S.Ct. at 3121.
 
 
 12
 With respect to the first requirement of the Williamson standard, this Court in Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d at 179 (quoting Unity Ventures v. Lake County, 841 F.2d 770, 775 (7th Cir.1988), cert. denied, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988)), held that "[a] plaintiff must demonstrate a final decision on a 'development plan submitted, considered, and rejected by the governmental entity." ' Covington submitted a development plan to the Oak Brook Board of Trustees for approval. The Trustees failed to vote on the submitted plan, giving rise to Covington's suit. We held that Covington should have sought a writ of mandamus from the state court to compel the vote. "We have frequently reminded litigants that federal courts are not boards of zoning appeals." Id. Thus, until the aggrieved party has obtained a final decision regarding the application of a regulation to property at issue, there is no reason for federal courts to intervene.
 
 
 13
 In the case before us, Vorhees has to date not been denied any property. There is no allegation that the plaintiff has a concrete plan in mind which he has presented to governmental officials, and that this plan has been finally and authoritatively rejected. Vorhees' property has not been limited in any way by Aurora, Naperville, DuPage County, the Naper Aero Club, or the Illinois Department of Transportation. Even if Vorhees had submitted such a development plan, local authorities, both at the municipal and state levels, should be given an opportunity to address this issue themselves. Should they pass on this opportunity, redress should be sought in state court rather than federal court. See generally River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir.1994). This question does not belong in federal court at this juncture in the proceedings.
 
 
 14
 The second Williamson requirement calls for us to determine what procedures and remedies are available to Vorhees at the state level. In Hager v. City of West Peoria, 84 F.3d 865 (7th Cir.1996), the plaintiffs alleged that city ordinances that limited vehicle access to the plaintiffs' businesses resulted in a taking of property and violated Constitutional rights to equal protection. We held:
 
 
 15
 Illinois law provides a judicially-created remedy of inverse condemnation for property owners aggrieved by municipal legislation. Plaintiff admits this. This admission acknowledges that federal court is not the proper venue for plaintiffs' takings claims. Only upon completion of existing state procedures and denial of just compensation may plaintiffs properly claim a taking without just compensation in federal court.
 
 
 16
 Id. at 869. See Biddison, 921 F.2d at 727 (Illinois provides an inverse condemnation action for property owners who are harmed by the government's actions; plaintiff's claim was not ripe because he had failed to utilize available remedies).
 
 
 17
 Vorhees has failed to commence inverse condemnation proceedings in Illinois, and writes them off as incapable of providing him with remedy.[3] This is simply not true. The Illinois constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." 1 Ill. Const.1970 § 15. Illinois courts have held that this provision is self-executing and provides a remedy to aggrieved property owners. Hoekstra v. County of Kankakee, 48 Ill.App.3d 1059, 8 Ill.Dec. 315, 365 N.E.2d 553 (Ill.App.Ct.1977). Additionally, the Illinois General Assembly may not place a taking beyond the reach of the courts--state courts must have jurisdiction to review a legislative taking of property to verify that it was for a public use consistent with the Illinois constitution. Poole v. City of Kankakee, 406 Ill. 521, 94 N.E.2d 416 (Ill.1950).
 
 
 18
 Thus, under this Court's well-founded precedent, the plaintiff-appellant Vorhees has failed to produce a scintilla of evidence demonstrating that his claim is ripe for adjudication in the federal courts as a "case or controversy."
 
 
 19
 Turning to two other points raised by the plaintiff, Vorhees wrongly claims that Illinois statutory construction has prohibited him from improving his property, and thereby "deprived him of a substantial interest in his property and constitutes a denial to him of due process of law and the equal protection of it ...." We recognize the fact that many plaintiffs who either bring takings claims to federal court and argue that state regulations are takings per se or attempt to circumvent state remedial procedures as dictated in Williamson will claim that the regulation in question violates their constitutional due process rights. See Gosnell v. City of Troy, 59 F.3d 654 (7th Cir.1995); Estate of Himelstein v. City of Fort Wayne, 898 F.2d 573 (7th Cir.1990). A violation of constitutional rights is a federal question and does not require parties to exhaust state remedies. Steffel v. Thompson, 415 U.S. 452, 472-473, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974). Nonetheless, we have consistently held that substantive due process considerations do not automatically provide federal courts jurisdiction to consider takings claims--plaintiffs are encouraged to seek their remedy in state court first. Gamble v.. Eau Claire County, 5 F.3d 285, 287-288 (7th Cir.1993). Additionally, substantive due process claims usually arise in situations where the Government goes beyond its prescribed power of eminent domain (i.e., where property is taken for a private use, rather than a public use). Id. at 287.
 
 
 20
 Vorhees attempts to argue that the Brach farm was being regulated for a private use because the regulation only benefitted a residential airport that was maintained for the exclusive use of members of the Naper Aero Club. We are of the opinion, however, that a strong public interest exists in upholding access to private aviation. There is no evidence before us to support the conclusion that any individual seeking to fly their own aircraft would be denied admission to the Naper Club. The Club serves the public interest by providing facilities for individuals who want to fly aircraft of their own.
 
 
 21
 Finally, the defendant attempts to argue that under takings precedent, he is nonetheless entitled to compensation. His reliance on the Supreme Court's takings analysis, however, puts him, for the purpose of argument, a step ahead of where he should be. As we have previously made clear, before he can bring a takings claim, Vorhees must suffer a taking. Since no taking has yet occurred here, this court need not concern itself with Vorhees' right to just compensation. Williamson, 473 U.S. at 186, 105 S.Ct. at 3116 ("a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.").
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Walter J. Cummings took no part in the decision of this petition for rehearing
 
 
 [1]
 Cowlishaw continues: "[The legislation] is intended to apply now to these three airports, to protect them from having hazards built within the area that they need in order to take off and land, so that your airport at Sandwich or wherever it is, would be protected from that kind of urban sprawl and from the fact that you have people there who have used these airports for years and who certainly don't want a five story apartment building built at the end of the runway." Id
 
 
 [2]
 The Supreme Court explained the rationale for this rule as follows: "Our reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although the question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty, ... this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations .... Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." 473 U .S. at 190-191, 105 S.Ct. at 3118-3119 (citations and internal quotation marks omitted)
 
 
 [3]
 Vorhees specifically characterizes the pursuit of administrative remedies and litigation as "an exercise in futility."